## A04A0555. JOHNSON v. THE STATE.
(601 SE2d 392)

PHIPPS, Judge.

A jury found David Johnson guilty of rape, assault, possession of a knife during the commission of a crime, and cruelty to children. He appeals, arguing that he received ineffective assistance of trial counsel and that the trial court improperly sentenced him as a recidivist. Although we agree with Johnson that his appointed attorney was not given adequate time to prepare for trial, we nevertheless find no ineffective assistance of counsel. In addition, we reject his sentencing challenge. Therefore, we affirm.

Johnson's wife, A. J., testified that early in the morning on February 17, 2001, she was sleeping in bed with their two-year-old son when Johnson woke her up, held a knife to her throat, and forced her to have vaginal sexual intercourse. He also attempted to have anal intercourse with her, but the child woke up, began crying, and pleaded with Johnson to stop. Johnson did stop. A. J. then went to her grandfather's house next door.

Deputy Bill Case of the Walker County Sheriff's Department testified that he responded to a call to go to Johnson's residence that morning. Case spoke with Johnson, who said that his wife had left the house after they had an argument. Case also testified that he had responded to three or four previous "domestic related" calls concerning Johnson and his wife, including one occasion in which he had hit her in the head with a claw hammer.

Another deputy testified that when the police arrived at A. J.'s grandfather's house, she was shaking and crying and appeared to be

"afraid for her life." She was taken to the hospital, where a nurse noted recent bruising on her arm, scratches on her neck, and redness in her vaginal and anal areas due to trauma. There was no sign of semen in her vagina, but the nurse did discover "a pubic type hair not consistent with hers inside the vaginal vault." The nurse testified that A. J. had told her that "she was in bed with her son, that her ex-husband came in, held a knife to her neck and forced her to have intercourse, he attempted anal intercourse but was not successful with that."

Johnson testified that he returned home that morning from a night out at a bar and awakened his wife. She got angry, accused him of having been with another woman, and began hitting him. Then she called 911 and left the house. Johnson denied having sex with his wife that morning or using a knife against her.

Johnson was charged with rape, two counts of aggravated assault, cruelty to children, and possession of a knife during the commission of a felony. The jury found him guilty on all counts. The court merged the two aggravated assault counts and sentenced Johnson to life in prison on the rape count, twenty years in prison on the assault counts, twenty years in prison on the cruelty to children count, and five years in prison on the knife possession count. Because Johnson was a recidivist, all sentences were without possibility of parole. Moreover, the sentences for rape, cruelty to children, and knife possession were to run consecutively.

After being appointed new appellate counsel, Johnson filed a motion for new trial alleging ineffective assistance of trial counsel. At a hearing on the motion, Johnson's trial counsel testified that he had been practicing law for 14 years and had tried approximately 40 criminal cases in front of a jury. He stated that the trial judge had appointed him to represent Johnson the Friday before the week of trial. Counsel, who already was representing Johnson in an unrelated matter, stated: "I didn't have much time to get involved in this case. You are talking about a situation where I get appointed the week before, and then try it the next week, so no, I had very little time. . . ." Counsel sought a continuance, and the judge agreed to postpone the trial one week.

Although counsel received discovery from the district attorney's office, he conducted no investigation of his own beyond speaking with Johnson and A. J. — who did not want to testify — before trial. He did not subpoena the tape of A. J.'s 911 call, nor did he interview any of the hospital personnel who had treated her. With respect to the foreign pubic hair found in A. J.'s vagina, counsel stated that he had not subpoenaed it because "[t]he first time I learned about this was probably right before trial so I don't think I would have had time to do

so." Counsel reviewed A. J.'s medical records, which he received from the district attorney, but not until "right before trial."

Appellate counsel asked trial counsel: "Do you feel that had you had more time between the time you were appointed and the time of trial, that you could have done things differently pertaining to the defense of Mr. Johnson?" Trial counsel replied, "No." When pressed, however, counsel conceded that if he had had more time and fewer other cases,

> I probably would have [subpoenaed] the doctor [who examined A. J.], had him here, nurses, receptionist. I would have got the 911 tape, analyzed the pubic hair. I would have done all that if I had the time and money to do all that. You know, it takes time to do that.

Counsel testified that he and Johnson had developed a trial strategy to attack A. J.'s credibility by, among other things, showing that she had previously accused Johnson of abuse but had dropped those accusations. Accordingly, Johnson planned to testify that A. J. had "made things up" in the past when the couple had had problems. To lay a foundation for this testimony, counsel planned to elicit testimony concerning prior charges and difficulties during cross-examination of the state's witnesses.

Following the hearing, the judge found without elaboration that counsel "was effective in his representation of [Johnson]." Accordingly, the judge denied the motion for new trial.

1. Johnson contends that trial counsel was ineffective in several respects. To prove ineffective assistance, a defendant must show that his counsel's performance was deficient and that the deficiency so prejudiced the defense that a reasonable probability exists that the trial's result would have been different but for that deficiency.[1] In proving deficient performance, the defendant "must overcome the strong presumption that trial counsel performed within the wide range of reasonable professional conduct and that any challenged conduct might be considered sound trial strategy."[2]

(a) Johnson claims that counsel failed to prepare adequately for trial. We agree that counsel was given little time to get ready for trial. Given the gravity of the charges against Johnson and the severity of potential sentences he faced, counsel should have had more than a mere ten days[3] to investigate, plan, and prepare a defense. This is

---

[1] *Young v. State*, 245 Ga. App. 684, 685 (2) (538 SE2d 760) (2000).

[2] (Footnote omitted.) *Jividen v. State*, 256 Ga. App. 642, 643 (1) (569 SE2d 589) (2002).

[3] Although counsel initially testified that he was appointed to the case the Friday before

true even though counsel was experienced and even though the case was not factually complex.

Nevertheless, we are constrained to conclude that Johnson failed to show any prejudice to his defense as a result of counsel's truncated preparation time. Counsel testified that he would not have done anything differently if he had had more time.[4] Although he eventually conceded that he "probably" would have subpoenaed witnesses from the hospital and investigated the 911 tape and foreign pubic hair, Johnson did not show that taking any of these actions would have yielded evidence favorable to his defense. Accordingly, Johnson cannot demonstrate a reasonable probability that but for counsel's inadequate preparation time, the trial would have turned out differently.[5]

(b) Johnson contends that counsel should have objected to responses that Detective Bill Cason gave during cross-examination. The following exchange occurred:

> COUNSEL: [I]t's not uncommon for victims to make up stories, is it? You have had that happen in your experience, is that not correct?
> CASON: . . . I've never taken a case to court with a victim who had made a false charge.

> * * *

> COUNSEL: You have worked cases before that haven't gone to trial that the victims lie, is that correct?
> CASON: Yes, sir, I make sure that before I take a case to the DA's office, that I, in my heart and mind as well as with the evidence, am sure that there is no lie.
> COUNSEL: You don't know if [A. J.] is telling the truth, you are just assuming she's telling you the truth, is that correct, because you weren't there?
> CASON: I am assuming based on past history and I think assumption is kind of a dangerous word to use, but I think based on the prior instances there is enough there that looks like a duck, walks like a duck, quacks like a duck is a duck.

---

trial was scheduled to begin, he later stated that the court granted him a one-week continuance. Thus, it appears that counsel had ten days to prepare for trial.

[4] See id. at 644 (1) (a) (finding no ineffective assistance where, among other things, trial counsel testified "that he would not have changed his preparation had he been afforded more time").

[5] Id. at 644-645.

COUNSEL: You — but you don't know for a fact, Detective Cason, that she's telling the truth, do you, with absolute positive, do you?
CASON: Yes, sir, in my heart and mind I have no doubt that she's telling the truth.
COUNSEL: Okay. You think she's telling the truth?
CASON: No, sir, I know that she's telling the truth.

Citing the principle that no witness may offer the opinion that another witness is telling the truth,[6] Johnson argues that defense counsel should have objected to Cason's testimony because it improperly bolstered A. J.'s credibility. But defense counsel elicited that testimony by pressing Cason to admit that he did not know whether A. J. was telling the truth. This line of questioning was consistent with counsel's stated trial strategy of attempting to brand A. J. as a liar with a history of making false reports of domestic abuse. That strategy may be questionable with the benefit of hindsight, but we cannot say that it was "so patently unreasonable that no competent attorney would have chosen [it]."[7]

(c) Johnson next argues that counsel should have objected to the nurse's summary of what A. J. had told her about the rape. According to Johnson, the nurse's testimony was inadmissible hearsay. Under *Cuzzort v. State*,[8] however, where the veracity of a witness is at issue, and that witness is present at trial, under oath, and subject to cross-examination, a prior consistent out-of-court statement by the witness is admissible.[9] Because the nurse's testimony was admissible, counsel did not render deficient performance by failing to object to it.

(d) Finally, Johnson argues that counsel should have objected to several references to his alleged drug use that improperly placed his character into evidence. In the first reference, Cason was asked on cross-examination whether A. J. had said that she had argued with Johnson on the night in question. Cason responded: "It seems like maybe before he left at eleven o'clock they had had an argument because she didn't want him to buy crack...." In the second reference, A. J. was asked during cross-examination whether she was afraid of Johnson. She replied, "When he's on drugs, yes." In the third reference, the state played a tape of a police interview with A. J. in which

---

[6] See, e.g., *Orr v. State*, 262 Ga. App. 125, 127-128 (2) (584 SE2d 720) (2003).
[7] *Howard v. State*, 220 Ga. App. 267, 271 (4) (469 SE2d 396) (1996), overruled in part on other grounds, *Felix v. State*, 271 Ga. 534, 540 (523 SE2d 1) (1999).
[8] 254 Ga. 745 (334 SE2d 661) (1985).
[9] See *Howard*, supra at 270 (3) (a).

she said that Johnson had asked her for money to buy crack that night, but she had refused him.

> While it is generally true that the defendant's character cannot be put in issue in a criminal case unless the defendant chooses to put character in issue, material evidence does not become inadmissible simply because it incidentally places the defendant's character in issue. [Cits.][10]

Here, the references to Johnson's drug use were relevant to his argument with his wife on the night in question (he claimed they had argued over extramarital sex; she told the police that the subject was his drug usage) and to whether she was afraid of him. These issues, in turn, were relevant to the credibility of both Johnson and A. J., on which the case ultimately turned. Thus, counsel's failure to object to the drug references was not deficient performance.

2. Johnson maintains that the judge improperly sentenced him as a recidivist under OCGA § 17-10-7 (c) because the state had not shown that one of his previous three felony convictions — a guilty plea to theft of a motor vehicle in Alabama — was voluntary.[11] He argues that the evidence of the conviction submitted by the state did not show that he had been represented by counsel while entering the plea.

When the state seeks recidivist punishment in a case not involving the death penalty, it bears the burden of proving (1) the existence of prior guilty pleas and (2) that the defendant was represented by counsel in connection with those pleas.[12] If the state offers such proof, "the presumption of regularity" attaches and "the burden shifts to the defendant to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea."[13]

In this case, the state produced copies of an indictment and a "Case Action Summary" showing Johnson's 1998 guilty plea to theft of an automobile in violation of Alabama law. The summary sheet lists "Alison W. Burns" as Johnson's attorney, and it contains a statement signed by the judge indicating that Johnson appeared in court represented by competent counsel and understood the implications of his guilty plea. Thus, contrary to Johnson's assertion, the

---

[10] *Parker v. State*, 244 Ga. App. 419, 423 (6) (535 SE2d 795) (2000).

[11] The state gave notice that it intended to introduce evidence of four previous felony convictions, but it ultimately produced evidence only of three.

[12] See *Freeman v. State*, 244 Ga. App. 393, 396 (2) (535 SE2d 349) (2000).

[13] Id.

state met its initial burden of proving that he had made a prior, counseled guilty plea. Johnson has presented no evidence that the plea was not valid.

Johnson also complains that the copy of the plea was not certified. Essentially, Johnson objects to the state's failure to use the best evidence to prove his prior conviction.[14] But Johnson failed to make that objection before the trial court and therefore has waived it.[15]

Finally, Johnson claims that the state failed to show that the crime to which he pled guilty in Alabama would have been a felony in Georgia.[16] The records submitted by the state show that Johnson pled guilty to theft of an automobile and received a sentence of ten years' imprisonment. Under Georgia law, theft of a motor vehicle is a felony, regardless of the value of the vehicle.[17] Thus, this argument lacks merit.

*Judgment affirmed. Smith, C. J., and Johnson, P. J., concur.*

DECIDED JUNE 17, 2004 — 

*Jennifer E. Hildebrand,* for appellant.
David L. Johnson, *pro se.*
*Herbert E. Franklin, Jr., District Attorney, Christopher A. Arnt, Assistant District Attorney,* for appellee.

---

[14] See OCGA § 24-5-1; *McIntyre v. State,* 266 Ga. 7, 10 (4) (463 SE2d 476) (1995).

[15] See *McIntyre,* supra; *O'Toole v. State,* 258 Ga. 614, 616, n. 2 (373 SE2d 12) (1988).

[16] See OCGA § 17-10-7 (a) (providing for recidivist sentencing for "any person convicted of a felony offense in this state or having been convicted under the laws of any other state . . . of a crime which if committed within this state would be a felony").

[17] See OCGA § 16-8-12 (a) (5) (A); *Sapp v. State,* 222 Ga. App. 415, 419 (5) (474 SE2d 233) (1996).