**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**May 17, 2012**

# In the Court of Appeals of Georgia

A12A0417. DUNHAM v. THE STATE.

BARNES, Presiding Judge.

Guy Dunham appeals his conviction for aggravated battery, contending that the trial court erred by allowing the State to introduce similar transaction testimony, by denying his motion for a mistrial, and by sentencing him as a recidivist under OCGA § 17-10-7 (c). He also asserts that his trial counsel was ineffective in several respects. For the reasons that follow, we affirm.

We view the evidence on appeal in the light most favorable to the verdict, and no longer presume the defendant is innocent. *Brown v. State*, 293 Ga. App. 633 (667 SE2d 899) (2008). We do not weigh the evidence or decide the witnesses' credibility, but only determine if the evidence is sufficient to sustain the convictions. Id. We

construe the evidence and all reasonable inferences from the evidence most strongly in favor of the jury's verdict. Id.

Viewed in that light, the evidence at trial established that the charges arose following an altercation between Dunham and four other men at a salvage yard. Customers at the yard stripped parts from used vehicles, and then carried the parts inside to a cashier for payment. Dunham and the four men were vying to strip and buy tires and wheels from the junked cars, which they then resold. Dunham had harassed the four men repeatedly before this incident, threatening to strike them, telling them they were not welcome in this country, and vowing that if they did not leave the premises something bad would happen. He told them they did not have the same right to buy tires that he did because they were not United States citizens. Dunham was 59 and the men, three of whom were brothers and one of whom was a brother-in-law of the others, ranged in age from 18 to 26. The men testified that when Dunham harassed them, they would just move to another part of the salvage yard to avoid him.

On June 18, 2009, Dunham approached one of the men and told him to move away from the car he was stripping because Dunham had already purchased the tires from all of the vehicles along that row. He pushed the man with his foot and the man, who was the only one in his group who spoke English well, complained to salvage

2

yard employees, who told him to deal with it himself. Dunham followed the man into the office and back out to another part of the yard where the other three men had moved. He approached a younger brother who was about to remove a wheel, and asked him if he wanted to fight. The man did not speak English, so he just laughed and kept working. Dunham, who was 6'2" and weighed 236 pounds, asked the much smaller man if he was making fun of him and tried to hit him with a metal rod, but Dunham missed the man and struck the car instead.

The other brothers, who were all 5'3" or shorter and weighed at most 165 pounds, intervened, and a struggle ensued. Dunham struck one man on his head and back and knocked him to the ground, and tried to strike another, who blocked the blow with his wrench. As the brother who had laughed returned to grapple with Dunham, Dunham bit down on his ear, tore it off with his teeth, and spit it out. The injured man testified that he knew Dunham was going to tear his ear off when he first bit him because Dunham was so angry.

The forklift operator broke up the fight and the owner told everyone to leave. Dunham left the premises, but the other men waited in the parking lot for the ambulance and police to arrive. The police located Dunham through his tag number, and he was indicted for two counts of aggravated assault for striking two of the men

with the metal rod, and one count of aggravated battery for biting off the ear of one of the men.

At trial the four men testified through an interpreter. The State also presented evidence of a similar transaction. A former bounty hunter testified that in 1995, he and his father went to pick up Dunham after he failed to appear in court for a traffic violation, but Dunham ran, then turned and fought when they caught up with him. Dunham grabbed for the father's gun and got his finger into the trigger, but the father stuck his hand between the hammer and the firing pin and grappled with Dunham. In response, Dunham "chewed [the father's] arm up. He bit him from about the elbow to the wrist. He just kept chewing on him, biting him."

Dunham testified that he previously told the men he would call the police and immigration authorities about them because he was hoping they would not come back to the salvage yard. He told them to go back where they came from "just to put something on their mind." He testified that on the day of the fight, the men "came at [him]" after he told them that what was in America was for Americans and that their "stuff" was in Mexico. He said there were five men, not four, and when they all attacked, he thought they were going to try to kill him. During the struggle, Dunham said, his arms were pinned and when one of the men twisted his head and his ear

4

brushed against Dunham's mouth, Dunham bit him because he had nothing else to fight with. He did not call the police afterward because he "figured they'd be man enough to take their medicine like a man and just go to the hospital. They started [the fight]. They should have been willing to suffer the consequences." The jury found Dunham guilty of aggravated battery but not guilty of the aggravated assault charges.

1. Dunham argues that the trial court erred in admitting the similar transaction evidence for an inappropriate purpose and because it was too old. Similar transaction evidence is admissible if (1) it is introduced for a proper purpose, (2) sufficient evidence shows that the accused committed the independent offense, and (3) a sufficient connection or similarity exists between the independent offense and the crime charged, so that proof of the former tends to prove the latter. See *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991).

The trial court considered the admissibility of the similar transaction evidence before trial, but after hearing the State's proffer the court determined that it wanted to hear the similar transaction witness testify before ruling on the issue. When the court again addressed the issue during trial, the similar transaction witness began to testify and Dunham objected to the State's photographic evidence of the bounty hunter's bite marks because he had not received them in discovery. The trial court

5

delayed its decision until the next day to give Dunham time to review the photographs with his lawyer. The next day, after extended colloquy regarding the purpose for which the State was offering the evidence, the trial court found that (1) the State was offering the evidence for a proper purpose, which was to show intent and course of conduct; (2) Dunham committed the independent act; and (3) a sufficient connection or similarity existed between the independent offense and the crime charged, so that proof of the former tended to prove the latter, specifically showing Dunham's tendency to respond with violence in "an otherwise relative[ly] minor situation."

In its order denying Dunham's motion for new trial, the court addressed the fact that the prior incident occurred 15 years earlier. The court noted that is was no bright-line rule regarding the admissibility of older similar transactions, and that here, the "striking similarity between the earlier incident and the one on trial made it especially relevant on the question of intent."

"To be admissible, an independent act does not have to mirror every detail of the crime charged. . . . When similar transaction evidence is used to show bent of mind, course of conduct, motive or intent, a lesser degree of similarity is required than when such evidence is introduced to prove identity." (Citations and punctuation omitted.) *Chua v. State*, 289 Ga. 220, 232 (2) (710 SE2d 540) (2011). In this case,

6

before the similar transaction witness testified and again during the final jury charge, the court instructed the jury that this evidence was being admitted solely for the limited purpose of showing, if it did show, Dunham's intent and course of conduct, and for no other purpose.

We find no error in the trial court's finding that the similar transaction evidence was being offered for an appropriate purpose – to show intent and course of conduct. In both incidents, Dunham responded to an altercation by biting the party with whom he was fighting, and as the State notes, in both cases he "drew blood and inflicted visible injuries." In both incidents Dunham used the tools at hand – an axe in 1995 and a metal bar he picked up in this case – and involved multiple other parties. Further, the trial court did not abuse its discretion in finding that the similar transaction evidence was more probative than prejudicial despite its age. "[T]he lapse of time between the prior occurrences and the offenses charged goes to the weight and credibility of such testimony, not its admissibility." *Cooper v. State*, 173 Ga. App. 254, 255 (1) (325 SE2d 877) (1985). See, e.g., *Ledford v. State*, 289 Ga. 70, 83-84 (12) (a) (709 SE2d 239) (2011) (evidence of 18-year-old rape conviction admissible in murder trial); *Mullins v. State*, 269 Ga. 157, 158 (2) (496 SE2d 252) (1998) (17-year-old voluntary manslaughter conviction admissible to show course of

conduct and bent of mind in malice murder and armed robbery trial); *Moore v. State*, 288 Ga. 187, 191 (3) (702 SE2d 176) (2010) (shooting incident 13 years earlier admissible in malice murder trial to show "inclination toward unprovoked gun violence").

2. Dunham asserts that the trial court erred in denying his motion for a mistrial after the bounty hunter's testimony improperly injected bad character evidence. When the State asked the witness whether Dunham knew why he and his father were there, he answered, "Yes. I mean, [my father] always told them, I'm so-and-so, I'm with [these] people, this is why we're here. Guy Dunham knew who we were. He'd run from us before. He even mentioned . . ." The State interrupted the witness and Dunham moved for a mistrial. The trial court denied the motion and instructed the jury to disregard the last portion of the witness's answer.

"A trial court has the discretion to grant a mistrial or to give curative instructions, and this court will only interfere with that discretion when granting a mistrial is essential to the preservation of the right to fair trial. (Citation and punctuation omitted.) *Hensley v. State*, 300 Ga. App. 136, 137 (684 SE2d 673) (2009). The witness's non-responsive answer, that Dunham had "run from [them] before," was fleeting, and the State interrupted immediately to forestall any further

testimony along that line, after which the trial court gave curative instructions. The trial court did not abuse its discretion in denying the motion for a mistrial.

3. Dunham contends that the trial court erred in sentencing him under OCGA § 17-10-7 (c) as a recidivist with three prior felony convictions, because the State failed to establish that he had knowingly and voluntarily entered his guilty plea to his 1977 conviction for selling cocaine. The record shows that Dunham raised no objection during sentencing to the trial court's use of this prior conviction, and thus has waived the issue. "A defendant cannot acquiesce in a trial court's ruling below and then complain about that ruling on appeal." *Beasley v. State*, 254 Ga. App. 839, 841 (2) (563 SE2d 909) (2002). This enumeration, therefore, has no merit.

4. Finally, Dunham argues that he was denied his right to effective assistance of trial counsel for six reasons.

> [T]o succeed on his claim of ineffective assistance, [Dunham] must satisfy both prongs of *Strickland v. Washington*, 466 U.S. 668 (104 SC 2052, 80 LE2d 674) (1984)[;] that is, he must prove that his attorney's performance was deficient and that there is a reasonable probability that the result of his trial would have been different but for such deficiency; in this Court's review of the trial court's decision regarding the alleged ineffectiveness, this Court is to accept the trial court's factual findings and credibility determinations unless they are clearly erroneous, but it is to independently apply the legal principles to the facts.

(Citation omitted.) *Nations v. State*, 290 Ga. 39, 42 (4) (717 SE2d 634) (2011).

(a) Dunham first argues that his trial counsel was deficient in failing "to make all of the proper objections to the State being allowed to introduce 'similar transaction' evidence," failing to argue expressly that the evidence would show only a propensity for violence. Trial counsel's objections to the similar transaction evidence were sufficient to raise these issues, however, regardless of whether he used the word "propensity."

(b) Dunham next argues that his trial counsel was ineffective for failing to move to limit the similar transaction witness's res gestae testimony, which he asserts was more extensive than the State's proffer. In arguing the motion, the State proffered that the similar transaction would show that Dunham fled from the bounty hunters and bit one of them when he was caught. He also used the tools at hand in both the similar transaction and the incident for which he was on trial; then, he used an axe, the bounty hunter's gun, and his teeth, and here, he used a metal rod and his teeth. In both instances he was outnumbered and reacted to relatively trivial matters "with extraordinary and unusual violence," specifically by using his teeth.

Dunham is correct that the witness's trial testimony was more extensive than the State's proffer or the witness's testimony at the motions hearing, but it included

no unrelated additional, irrelevant crimes, as was the case in *Sessions v. State*, 207 Ga. App. 609, 609-610 (2) (428 SE2d 652) (1993). The "testimony came well within the scope of the facts brought up in the similar transaction hearing. It does not appear that [Dunham] was unfairly prejudiced or surprised by [the witness]'s testimony." *Woods v. State*, 250 Ga. App. 164, 167 (1) (b) (550 SE2d 730) (2001). As the evidence was admissible, trial counsel was not ineffective for failing to make a meritless objection. *Wesley v. State*, 286 Ga. 355, 357 (3) (e) (689 SE2d 280) (2010).

(c) Dunham asserts that his trial counsel was ineffective for failing to renew his motion for mistrial after the trial court denied it and gave curative instructions instead. But trial counsel excepted to the court's ruling, which preserved the issue for review. *Brown v. State*, 268 Ga. 455, 457 (3) (490 SE2d 379) (1997). And the issue was, in fact, reviewed in Division 2.

(d) Dunham argues that his trial counsel was ineffective for failing to object when the State cross-examined him about the similar transaction, about which he did not testify on direct. He contends that the State improperly impeached him with this evidence of his prior conviction. Dunham conflates the analysis of whether a similar transaction is admissible to prove "identity, motive, plan, scheme, bent of mind, and course of conduct" with the analysis of whether a prior conviction is admissible for

11

impeachment purposes. *Robertson v. State*, 306 Ga. App. 721, 724 (2) (703 SE2d 343) (2010).

After pretrial notice and a hearing, a trial court may determine that similar transaction evidence is admissible for a proper purpose, regardless of whether the defendant testifies. Id. As a separate issue, if a defendant testifies and places his character into evidence, the State may impeach him by introducing evidence of prior felony convictions if the trial court determines that the probative value of the conviction substantially outweighs its prejudicial effect. OCGA § 24-9-84.1 (a) (2); *Newsome v. State*, 289 Ga. App. 590, 592-593 (2) (657 SE2d 540) (2008). If the prior felony conviction is more than ten years old, however, the State must give the defendant advance written notice of its intention to use it for impeachment purposes so he has an opportunity to contest its use. OCGA § 24-9-84.1 (b).

"OCGA § 24-9-64 provides that all parties to a criminal proceeding are entitled to a thorough, sifting cross-examination as to the witnesses called against him. . . . If a defendant testifies, he may be cross-examined by the prosecution like any other witness." *Hooks v. State*, 253 Ga. 141, 143 (3) (317 SE2d 531) (1984). In this case, the trial court had already determined that evidence of the similar transaction was admissible for a proper purpose and that its probative value outweighed its prejudicial

12

effect, and in Division 1 we upheld that ruling. Thus, the issue was relevant to the case, and by choosing to testify, Dunham subjected himself to cross-examination about his prior actions. Id.; See *Childs v. State*, 287 Ga. 488, 491 (3) (696 SE2d 670) (2010). The State did not ask Dunham about his prior conviction to impeach him, but asked him about the similar transaction already in evidence, which it was permitted to do. Thus, trial counsel was not deficient for failing to object to the State's cross-examination.

(e) Dunham argues his trial counsel was ineffective in asking a witness whether he was a legal alien, after the trial court had already sustained the State's objection to Dunham asking the previous witness whether he had a visa to be in this country. When the state objected to the legal alien question, the trial court sent the jury out and pointedly questioned Dunham's trial counsel about why he asked the question in violation of the court's earlier ruling, to which counsel responded that the ruling had been made regarding a different witness. Dunham admits that his testimony showed he was prejudiced against these victims and argues that "giving the jury the impression that counsel shared in that bias or prejudice could not benefit [him] in any manner." As the trial court found in its order denying Dunham's motion for a new trial, "This contention is merest speculation on the part of defendant. . . . The point

13

of the attempt [to ask about the victim's or witness's immigration status] was to show that the victim himself was a lawbreaker and thus subject to impeachment." The court concluded that this was a matter of trial strategy and not ineffective assistance of counsel, and this finding was not clearly erroneous. *Terry v. State*, 284 Ga. 119, 120, 122 (2) (d) (663 SE2d 704)(2008).

(f) Dunham contends that his 1977 felony conviction should not have been used to sentence him as a three-strike recidivist under OCGA § 17-10-7 (c) because the State did not show that the plea was entered knowingly and voluntarily.

"In recidivist sentencing, the State bears the burden of showing both the existence of the prior guilty pleas and that the defendant was represented by counsel when he entered the pleas." *Beck v. State*, 283 Ga. 352, 353 (2) (658 SE2d 577) (2008). See *Nash v. State*, 271 Ga. 281 (519 SE2d 893) (1999). The State met that burden in this case by introducing during sentencing a certified copy of Dunham's 1977 counseled plea of guilty to a felony charge of theft by taking, along with two other felony convictions for selling cocaine in 1992 and 1995. Dunham argues that there is no "presumption of regularity" in his 1977 sentencing because the Uniform Superior Court Rules had not yet become effective, and therefore the State should have the burden of showing that he entered his plea knowingly and voluntarily. . The

14

"presumption of regularity" discussed by the Georgia Supreme Court in *Beck* and *Nash* does not rely solely upon the application of the Uniform Superior Court Rules, however, but "on the presumption, long recognized in Georgia, in favor of the regularity and legality of all proceedings in the courts below." *Nash,* 271 Ga. at 284.

Once the State introduces evidence that the defendant entered a guilty plea and had been represented by counsel, the presumption of regularity attaches, and the burden shifts to the defendant to show any alleged irregularities. *Beck,* 283 Ga. at 354 (2). "[ZT]he burden of production is on the recidivism defendant rather than the State when the defendant seeks . . . to challenge the validity of a prior guilty plea used to enhance a sentence in such proceedings." *Nash,* 271 Ga. at 284. Dunham has made no showing that any evidence exists with which his trial counsel could have met that burden, and therefore has not shown that his trial counsel rendered ineffective assistance by failing to challenge the use of his 1977 felony conviction to enhance his sentence.

*Judgment affirmed. Adams and McFadden, JJ., concur.*