**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 12, 2014**

# In the Court of Appeals of Georgia

A13A1794. GRANT v. THE STATE.

BARNES, Presiding Judge.

Michael Grant appeals his convictions for aggravated assault and fleeing or attempting to elude a police officer. He enumerates five errors, contending first that the State failed to prove venue on the fleeing or eluding count. Grant also argues that the trial court erred in sustaining the State's objection to evidence about the victim's acts of violence against third parties, in allowing the State to present evidence of the witnesses' prior consistent statements, and in sentencing Grant to serve time without parole as a recidivist. He also argues that his trial counsel was ineffective for failing to object to one of the guilty pleas that served as the basis for his recidivist sentence. For the reasons that follow, we reverse the conviction for fleeing and eluding for insufficient evidence of venue, affirm the aggravated assault convictions, and remand for resentencing.

Once a defendant has been convicted, the evidence is construed to support the jury's verdict, and "the defendant no longer enjoys the presumption of innocence." (Footnote omitted.) *Powell v. State*, 310 Ga. App. 144 (712 SE2d 139) (2011). Furthermore, we do not weigh the evidence or determine witness credibility but only resolve whether "the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt." Id. As long some competent evidence supports the essential elements of the State's case, we must uphold the jury's verdict. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

So viewed, the evidence showed that Grant was a restaurant manager and got into an argument with the short order cook, who was the restaurant co-owner's son. After Grant and the cook exchanged words, Grant said, "Now I got [sic] something for you," and walked out of the front door. He got into his car, drove around the restaurant, and came in the back door holding a handgun behind his leg, covered with a towel. When the cook turned to look at him, Grant shot him in the hand, then shot him several more times in the legs. Grant pistol-whipped the cook until both men fell to the ground. After a struggle, the cook got to his feet and Grant shot him twice more as the cook made his way out of the front door and again fell to the ground.

2

A customer intervened as Grant approached the victim again and Grant got into his car and drove away. The cook was transported to the emergency room, where he was treated for multiple gunshot wounds in his hand, arm, pelvis, and leg. He underwent immediate "damage control" surgery to repair his bladder, his intestine, and a large vein in his pelvis that was bleeding into his abdominal cavity. After 36 hours in the ICU, the cook underwent further abdominal surgery, followed by numerous additional operations to repair other damage.

A police officer with the Savannah-Chatham Metro Police Department (SCMPD) testified that he was looking for Grant's car in response to a be-on-the-lookout when Grant drove past him traveling in the opposite direction. The officer turned around, caught up with Grant at a red light, and hit his blue lights and siren for one "quick whoop" to make a traffic stop. Grant turned and looked at the officer, then took off at a high rate of speed with the officer following. The officer finally lost sight of the car briefly in a residential neighborhood. Shortly after that, Grant stopped his car, got out, and was apprehended by other SCMPD officers.

After Grant was arrested, he indicated to one of the officers that he wanted to talk about the incident. After being advised of his rights, Grant told the officer in a recorded discussion played for the jury that he did not know why he shot the cook and

3

did not want to do it, but the cook had been coming into the restaurant every day angry about something. A few weeks before the cook had "jumped on his girlfriend" in the store, Grant said, and the day before he had been "cussing and hollering at his mama." The day of the shooting, the cook began talking about Grant to his mother and the two men began to argue. He told the arresting officer that he shot the cook four or five times, and he emphasized, "I shot him low. I didn't shoot him in the groin. I just put some lube in his ass."

Grant was acquitted of criminal attempt to commit murder. He was convicted of aggravated assault by shooting the cook with the intent to murder him, of aggravated assault by shooting the cook with a deadly weapon, and for fleeing and eluding a police officer.[1]

1. Although Grant did not specifically challenge the sufficiency of the aggravated assault convictions, the evidence as outlined above was sufficient to sustain them. To authorize a conviction for aggravated assault with intent to murder, the State must show that the defendant acted with the deliberate intent to kill at the time of the assault, which the jury may infer from "the nature of the instrument used

---

[1]The two aggravated assault counts were merged for sentencing, and the trial court granted an order of nolle prosequi on one count of possession of a firearm by a convicted felon and one count of possession of a firearm by a convicted felon.

in making the assault, the manner of its use, and the nature of the wounds inflicted." (Citations and punctuation omitted.) *Tanner v. State*, 86 Ga. App. 767 (1) (72 SE2d 549) (1952). In this case, evidence that Grant deliberately shot the cook in the back multiple times as the cook tried to get away was sufficient to authorize the jury to find Grant guilty of assault with intent to murder. *Moody v. State*, 279 Ga. App. 440, 443 (1) (631 SE2d 485) (2006).

As to the second assault count, the State is not required to prove specific intent when charging someone with aggravated assault by means of a deadly weapon; rather, the State need only prove a general intent to injure. *Barnes v. State*, 296 Ga. App. 493, 495 (675 SE2d 233) (2009). The evidence in this case was sufficient for a rational trier of fact to find that Grant had the requisite intent to commit aggravated assault based on his words, conduct, and demeanor.

2. Grant argues that the State failed to present evidence of venue to sustain the conviction for fleeing or attempting to elude a police officer. Grant was charged with and convicted of the offense of fleeing or attempting to elude in Chatham County in violation of OCGA § 40-6-395 (a), which makes it "unlawful for any driver of a vehicle willfully to fail or refuse to bring his or her vehicle to a stop or otherwise to

flee or attempt to elude a pursuing police vehicle or police officer when given a visual or an audible signal to bring the vehicle to a stop."

The evidence showed that the shooting occurred at a restaurant located in Chatham County, and that afterward Grant left the scene in his car. Several police officers gave extensive testimony identifying the streets over which they traveled in their successful pursuit of Grant. After his arrest, Grant told a detective which streets he had driven down and the location where he threw his gun from the car window. But neither Grant nor the officers identified the county where Grant refused to stop when signaled to do so or the county or counties through which the chase occurred.

Criminal actions must generally be tried in the county where the crime occurred. OCGA § 17-2-2 (a). When a defendant pleads not guilty, the State must prove every element of the charged crime, including venue, beyond a reasonable doubt. *Jones v. State*, 272 Ga. 900, 902-903 (2) (537 SE2d 80) (2000). It may prove venue "by whatever means of proof are available to it," including both direct and circumstantial evidence. Id. When a crime is committed in a vehicle traveling within this state, "and it cannot readily be determined in which county the crime was committed, the crime shall be considered as having been committed in any county in

6

which the crime could have been committed through which the . . . vehicle . . . has traveled." OCGA § 17-2-2 (e).

The State argues here that it proved venue for this count under OCGA § 17-2-2 (h), which provides that "[i]f in any case it cannot be determined in what county a crime was committed, it shall be considered to have been committed in any county in which the evidence shows beyond a reasonable doubt that it might have been committed." "The purpose of [subsection (h)] is to provide for establishment of venue in situations in which there is either some doubt as to which county was the scene of the crime or where the crime in fact occurred in more than one county." *Bundren v. State*, 247 Ga. 180, 181 (1) (274 SE2d 455) (1981).

But the offense of eluding an officer is complete when a defendant refuses to stop his vehicle despite visual and audible signals to do so. *Mack v. State*, 283 Ga. App. 172, 173 (1) (641 SE2d 194) (2007). In this case, the location where Grant refused to stop when signaled to do so was known. The officer from whom Grant fled could have established which county they were in when Grant refused to stop his car, and any of the officers could have identified the county or counties through which Grant was pursued and taken into custody, but they were never asked to do so. The evidence did not establish that it was difficult to determine where the crime was

7

committed, or that the crime could have been committed in more than one county; the State simply failed to present any evidence about counties except that the shooting took place in Chatham County.

The State argues that testimony identifying which streets Grant traveled and that the officers worked with the SCMPD was sufficient, noting that Grant did not move for a directed verdict on the issue of venue. It also argues that the evidence of venue was not conflicting and that under these circumstances slight evidence was sufficient to prove venue. But our Supreme Court in *Jones* specifically held in 2000 that "slight evidence" is not sufficient to prove venue, that venue is an element of each crime, and that it must be proven beyond a reasonable doubt. *Jones*, 272 Ga. at 903 (2); see also *Segel v. State*, 293 Ga. App. 506, 507 (1) (b) (667 SE2d 670) (2008).

While Grant and several police officers testified about the streets on which they traveled, "a street name, standing alone, is never sufficient to establish venue." (Footnote omitted.) *Jones*, 272 Ga. at 904 (3). "The only other alleged evidence of venue consisted of the testimony of the four law enforcement officers who [tried to stop Grant or] responded to the scene, each of whom stated that they were employed by the [Savannah-Chatham Metro Police Department]. *In the Interest of B.R.*, 289 Ga. App. 6, 8 (2) (656 SE2d 172) (2007). Merely identifying the names of streets and the

8

arresting officers' place of employment is insufficient to prove venue beyond a reasonable doubt, and therefore Grant's conviction for fleeing and eluding must be reversed. See id.; *Jones*, 272 Ga. at 904 (3).

3. Grant next argues that the trial court erred in prohibiting him from presenting evidence of the victim's acts of violence against third parties.[2] Grant filed a pretrial notice that he was claiming the affirmative defense of justification and intended to present evidence of violent acts the victim committed against third parties. See Uniform Superior Court Rule 31.6; *Chandler v. State*, 261 Ga. 402, 407-408 (3) (405 SE2d 669) (1991).

> An exception to the general rule that a victim's violent character is rarely relevant in a criminal proceeding exists when a defendant claims his actions were justified and offers evidence that the victim was the aggressor. To make a prima facie showing of justification so as to allow evidence of violent acts of the victim against third parties, the defendant must show that the victim was the aggressor, the victim assaulted the defendant, and the defendant was honestly trying to defend himself. The key showing must be that the victim was the aggressor in the fatal encounter. The trial court's decision to exclude evidence of a victim's acts of violence against third persons is examined by the appellate court for abuse of discretion.

---

[2]Grant was tried in 2011, so Georgia's new Evidence Code does not apply to this case. See Ga. L. 2011, p. 99, § 101.

(Citations and punctuation omitted.) *Smith v. State*, 292 Ga. 316, 317-318 (2) (737 SE2d 677) (2013).

Grant argues that a prima facie case of justification was established by evidence of his statement to one of the detectives, a recording of which was played during the trial. Grant told the detective that after he and the cook began to argue, the cook "got up in [Grant's] face" and started making body contact with him. As Grant was leaving the restaurant, the cook came up behind him and "was all up on [him]" but other people stepped between the men and Grant walked out the front door alone. Grant told the detective that he retrieved a pistol and came in the back door holding the gun, then said,

> And [the cook] saw me, came from behind the counter. I don't know what it was he had in his hand. I ain't going [to] sit here and lie. I don't know what he had in his hand and he couldn't see what I had in my hand, because I had it behind my leg. . . . But there's a trash can right there and a refrigerator right there. I just really seen [sic] the silhouette, like just a silhouette, and I don't know, I can't – I'm not going [to] lie to you if he had a knife or what he had, I don't know. I know he had something, right? And then it could have – because it's chrome, right beside the refrigerator is chrome, right? . . . And I don't know when he came, when he come around and he started coming towards me again, right, I just – I brung the pistol out [sic] and I shot him in the leg.

10

Grant explained to the detective that at that point, he "just lost control" and shot the cook several more times.

Grant argued during trial that evidence that the cook came towards him with something in his hand, along with pictures of blood spatter that allegedly corroborated Grant's description of the event, constituted prima facie evidence that Grant acted to defend himself against an assault. The trial court noted that after the first argument between Grant and the cook ended, Grant chose to return to the restaurant armed with a gun he was hiding in his clothing. The court further observed,

> and the most the evidence shows is that the victim turned towards him, advanced, and it's not clear how close or how far away he was when he did advance, with something in his hand, and the defendant shot first without finding out what was in his hand, with no verbal threats of any kind from the victim by the defendant's testimony, and I don't think he's made a showing that was an assault on him that justified him shooting.

To gain the admission of evidence that the victim committed violent acts against third parties, "the key showing must be that the victim was the aggressor in the . . . encounter." *State v. Hodges*, 291 Ga. 413, 418 (728 SE2d 582) (2012). "Justification cannot be based on an assault which has ended." (Citation omitted.) *Cloud v. State*, 290 Ga. 193, 196 (2) (719 SE2d 477) (2011) (no error in disallowing

11

evidence of victims' prior violent acts against third parties when defendant, after being beaten by victims, retrieved a shotgun from his truck and fired on the men as they ran toward their cars). Here, the initial argument ended before Grant retrieved his gun, returned to the kitchen, and shot the victim. Further, Grant never said he thought that the victim had a knife in his hand, only that he thought the victim had "something" in his hand which could possibly have been a knife. Given the evidence outlined above, the trial court did not clearly err by denying the introduction of the evidence that Grant sought. See *Slaughter v. State*, 292 Ga. 573, 576 (2) (740 SE2d 119) (2013).

We note that, notwithstanding the trial court's ruling, the jury heard evidence about the cook's temperament and his prior acts of violence against third parties. The cook's mother testified that her son had a temper and "the least little thing can kinda make him hot." She also testified that he had hit his girlfriend at the restaurant, and while she did not call the police that time, she had done so twice before. Finally, she testified that her son the cook had been "talking junk" to her before arguing with Grant on the day of the shooting. Another witness testified that she had been present at the restaurant once when the mother called the police because she and the cook were arguing and she wanted him to leave the restaurant. On cross-examination, the

12

cook admitted that he had been previously charged with making a false statement because he had told the police that two men shot him after an altercation when the truth was that he had shot himself during an argument with his girlfriend and her father. A police officer testified that, on another occasion, he responded to a call and found the cook's girlfriend with a split lip and red face, who told him that she and the cook had been in an altercation and slapped each other. The cook gave the officer a false name. Another officer testified that he responded to a call from the cook's girlfriend, who was "basically looking for some protection" from the cook, who had struck her in the face. She told the officer there had been prior instances of violence between them. Thus the jury had a great deal of evidence related to the cook's acts of violence against other people, and we find no merit in this enumeration of error.

4. Grant asserts in a well-researched argument that the trial court erred in allowing the State to introduce evidence of prior consistent statements by witnesses to the shooting, which thus improperly fortified or bolstered their testimony. During his cross-examination of these witnesses, Grant questioned them about differences between their statements to the initial patrol officer and their testimony at trial, intimating that they had all changed their stories to protect the cook after speaking with the officer. The State then called the lead detective to testify. Grant moved in

13

limine to bar the detective from testifying about his interviews with these witnesses, whose statements mirrored their trial testimony, arguing that he was not challenging their statements to the detective, but rather the consistency of their statements to the initial patrol officer.

The trial court denied the motion, ruling that Grant had challenged the witnesses' credibility and thus the State was entitled to introduce their prior consistent statements. The detective testified that he arrived on the scene about 50 minutes after the shooting, and uniformed patrol officers had secured the area. He recorded interviews with the witnesses, all of whom had been gathered in the parking lot except for the restaurant owner and cook's mother, who was sitting in the salon next door, and testified about the substance of those interviews. The State then played the recorded interviews for the jury, over Grant's objection.[3]

The trial court's admission of the detective's recorded interviews with these witnesses was error.

> Since 1985, Georgia law has allowed certain prior consistent statements
> of a witness to be admitted as substantive evidence. In 1998, this Court
> clarified that a witness's prior consistent statement is admissible only

[3]The transcription of these recordings as they were being played for the jury was of great help in considering this appeal.

14

where (1) the veracity of a witness's trial testimony has been placed in issue at trial; (2) the witness is present at trial; and (3) the witness is available for cross-examination.

(Citations and punctuation omitted.) *Cowart v. State*, ___ Ga. ___ (4) (a) (Case Nos. S13A1295, S13A1296, Decided November 18, 2013).

The State argues that the trial court did not err because Grant repeatedly attempted to elicit testimony from the witnesses admitting that their version of events was colored by the fact that the victim was the son of their employer and friend, and intimated that they had revised their stories as a group to present the victim in the best light after speaking with the initial patrol officer. But a prior consistent statement is only admissible if affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross examination; otherwise "the witness's prior consistent statement is pure hearsay evidence, which cannot be admitted merely to corroborate the witness, or to bolster the witness's credibility in the eyes of the jury." (Citation and punctuation omitted.) *Cowart*, ___ Ga. at ___ (4) (a). Most importantly here,

to be admissible to refute the allegation of recent fabrication, improper influence, or improper motive, the prior statement must *predate* the alleged fabrication, influence, or motive. If the [consistent] statement

15

was made later, proof of the statement does not assist the jury to evaluate the witness's testimony because the reliability of the statement is subject to the same doubt as the trial testimony.

(Citations and punctuation omitted, emphasis supplied.) Id.[4]

In this case, the witnesses' prior consistent statements to the detective did not predate when they were alleged to have fabricated and revised their stories, namely, after speaking with the initial patrol officer who responded to the scene. The only motive Grant asserts as a reason for their unified fabrication– a desire to help the victim – allegedly by the time that they gave their statements to the detective. Accordingly, the trial court erred in admitting evidence of the statements the witnesses made to the detective, which did not qualify as prior consistent statements and were instead improperly used to bolster the witnesses' credibility. *Duggan v. State*, 285 Ga. 363, 366 (2) (677 SE2d 92) (2009) (trial court erred in admitting

---

[4]"Georgia had no statute governing the admission of prior consistent statements in the pre-2013 [evidence] code. OCGA § 24-6-613 (c) fills this gap and codifies [prior case law]." Ronald L. Carlson and Michael Scott Carlson, Carlson on Evidence: Comparing Georgia Rules & Federal Rules 269 (2nd ed. 2014). OCGA § 24-6-613 (c) provides, "If a prior consistent statement is offered to rebut an express or implied charge against the witness of recent fabrication or improper influence or motive, the prior consistent statement shall have been made before the alleged recent fabrication or improper influence or motive arose."

16

statement witness made to police the night of shooting, because any motive to lie related to fact that victim was a relative predated the statement).

We conclude, however, that the error is harmless. In making this determination, we do not rely on the fact that the witnesses gave similar testimony at trial, "as the very nature of the error in admitting the prior consistent statement is that it is repetitive of that to which the witness has already testified." (Footnote and punctuation omitted.) *Character v. State*, 285 Ga. 112, 120 (6) (674 SE2d 280) (2009). Other evidence was sufficient to establish the aggravated assault, including the victim's detailed testimony and Grant's version of events revealed through the statements he made to the detective in charge of the case. While Grant said he thought he saw something in the victim's hand before he shot and denied that he intended to kill the victim, he also said he did not know why he shot him and that he realized he could have chosen not to go back into the kitchen with a gun in his hand. We thus conclude that the trial court's error in admitting evidence of the witnesses' prior statements was harmless.

5. Grant contends that the trial court erred in sentencing him as a recidivist ineligible for parole under OCGA § § 17-10-7 (c).[5] OCGA § 17-10-7 (c) provides that a person convicted of a fourth felony "shall . . . serve the maximum time provided in the sentence of the judge based upon such conviction and shall not be eligible for parole until the maximum sentence has been served." During the sentencing hearing, the State introduced evidence of three prior felony convictions as evidence in aggravation of punishment. Grant objected to two of the three convictions, the trial court overruled the objections, and Grant was sentenced under OCGA § 17-10-7 (c). Grant argues on appeal that the trial court erred in considering the third prior felony conviction because the State failed to establish that he knowingly and voluntarily entered his 1981 plea of guilty to two counts of armed robbery.

"The existence and validity of three prior felony convictions are necessary predicates to the imposition of a recidivist sentence under OCGA § 17-10-7 (c). *von Thomas v. State*, 293 Ga. 569, 572 (2) (748 SE2d 446) (2013). The record establishes, however, that Grant failed to object to the admission of evidence of this conviction,

[5]Grant was also sentenced under OCGA § 17-10-7 (a), which provides that a person convicted of a second felony shall be sentenced to the maximum length of time prescribed for the punishment of that felony, but gives the trial court the discretion to probate or suspend part or all of the sentence. He does not challenge being sentenced under this subsection.

18

and therefore waived his claim that the State failed to prove that the plea was entered knowingly and voluntarily. Id. at 575 ("[O]bjections to the validity of prior convictions used in aggravation of sentence — including objections that the defendant was denied the assistance of counsel in connection with the prior convictions — can be waived."); *Dunham v. State*, 315 Ga. App. 901, 905 (3) (729 SE2d 45) (2012) (defendant who failed to object to trial court's use of prior guilty plea to sentence him as recidivist waived issue of voluntariness of the plea).

6. Grant asserts that his trial counsel was ineffective for failing to object to the admission of evidence concerning his 1981 guilty plea to two counts of armed robbery, without which he would not have been sentenced under OCGA § 17-10-7 (c) as a recidivist ineligible for parole during his incarceration.

> It is well established that the failure to object in the trial court constitutes a waiver of a party's right to raise a matter on appeal. See, e.g., *Rosser v. State*, 284 Ga. 335, 337 (3) (667 SE2d 62) (2008). However, when those same matters are raised in a claim of ineffective assistance of trial counsel, we consider the alleged errors within the analytical framework of an ineffectiveness claim, under which, in order to prevail, [Grant] must show both that his trial counsel's performance was deficient and that, but for the deficient performance, there is a reasonable probability the outcome of the trial would have been

19

different. Id. at 337 (4). See also *Smith v. Francis*, 253 Ga. 782 (1) (325 SE2d 362) (1985).

*Raymond v. State*, 298 Ga. App. 549, 552 (2) (680 SE2d 598) (2009).

Grant argues that his trial counsel's failure to object to the admission of evidence concerning his 1981 guilty plea constituted deficient performance, because the evidence established affirmatively that his plea was not knowing and voluntary. He further contends that but for the deficient performance, there is a reasonable probability that his sentence would have been different.

The burden of proof for establishing that a guilty plea was entered freely and voluntarily differ depending on whether the challenge is to the plea itself or to the use of the plea to aggravate a sentence. In the direct appeal of a guilty plea, the State must affirmatively show that the defendant validly waived the constitutional rights affected by entering the plea, including his privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers. *Boykin v. Alabama*, 395 U.S. 238, 243 (89 SCt 1709, 23 LE2d 274) (1969); *Beckworth v. State*, 281 Ga. 41, 42 (635 SE2d 769) (2006) ("the three *Boykin* rights"). But in a collateral attack on a felony guilty plea used to impose a recidivist sentence, such as the one here, the State's initial burden is to prove only that the plea existed and that the defendant was

20

represented by counsel when he entered the plea. *Parke v. Raley*, 506 U.S. 20, 29 (113 SCt 517, 121 LE2d 391) (1992). After making this showing, the State may then rely on "the 'presumption of regularity' that attaches to final judgments." Id,

At that point, the burden shifts to the defendant "to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea." *Nash v. State*, 271 Ga. 281, 285 (519 SE2d 893) (1999); *Johnson v. State*, 268 Ga. App. 1, 6 (2) (601 SE2d 392) (2004). If the defendant presents affirmative evidence of a constitutional infirmity, the burden shifts back to the State to prove the constitutionality of the plea. *Nash*, 271 Ga. at 285.

In this case, at sentencing the State introduced a certified copy of the entire record related to the 1981 plea of guilty to two counts of armed robbery, which included the indictment signed by Grant and his attorney, the order sentencing Grant to serve eight years in prison, a one-page document with questions and answers titled "Transcript," and a one-paragraph document signed by the trial court titled "Certificate," which estates that the defendant answered in open court the questions in the "Transcript" and entered his plea freely and voluntarily. The State thus met its initial burden to show that Grant was represented by counsel when he entered this guilty plea. The State could then rely on the presumption of regularity in judgments

21

and the burden shifted to Grant to establish affirmative evidence showing an infringement of his rights or a procedural irregularity in entering his plea. *Beck v. State*, 283 Ga. 352, 354 (2) (658 SE2d 577) (2008).

Grant argued in his motion for new trial and on appeal that the "Transcript" and "Certificate" forms that are part of the record in his 1981 armed robbery plea establish that he was advised of only one of his three *Boykin* rights, which was his right to trial by jury. The forms do not establish that he was informed of his right to the assistance of counsel at trial or of his right to avoid self-incrimination at trial. Additionally, Grant submitted an affidavit of the court reporter, who averred that he could not locate the transcript of the guilty plea hearing or any notes from which the transcript could be recreated. Thus, Grant has made an affirmative showing of a constitutional infirmity in the taking of his plea. See *Beckworth v. State*, 281 Ga. 41, 42 (635 SE2d 769) (2006) (in habeas appeal, waiver forms used in plea hearing containing only one of three *Boykin* rights did not establish defendant made a knowing, voluntary, intelligent waiver of rights).

Grant having produced affirmative evidence showing "an infringement of his rights or a procedural irregularity in the taking of the plea," the burden should thus shift back to the State to prove the constitutionality of the 1981 plea. *Nash*, 271 Ga.

22

at 285. The State has not yet had an opportunity to make such a showing, but we conclude that a reasonable probability exists that, but for trial counsel's deficient performance in failing to object to the use of this plea, Grant might have received a different sentence. *Thompson v. State*, 276 Ga. 701, 704 (583 SE2d 14) (2003) (trial court erred in relying on uncounseled guilty plea to enhance sentence).

Accordingly, Grant's sentence is vacated and the case is remanded for further proceedings consistent with this opinion. *Donaldson v. State*, 244 Ga. App. 89, 93 (5) (c) (534 SE2d 839) (2000) (sentence vacated and case remanded "for a resentencing hearing wherein the 'shifting' burdens of *Nash v. State*, supra, are recognized and followed.")

*Judgment affirmed in part and reversed in part, sentence vacated, and case remanded for resentencing. Miller, J. concurs.  Ray, J., concurs in Divisions 1, 2, 3, 4, and 5, and concurs in the judgment only as to Division 6.*

23