**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 13, 2015**

# In the Court of Appeals of Georgia

A14A1992. PEREZ v. THE STATE.                                    DO-073 C

DOYLE, Presiding Judge.

Victor Perez appeals the denial of his motion for new trial following his conviction of burglary[1] and misdemeanor obstruction of an officer.[2] He contends that (1) evidence of a prior bad act was improperly admitted, (2) the trial court improperly excluded certain photographic evidence offered in his defense, and (3) he received ineffective assistance of counsel. For the reasons that follow, we affirm.

---

[1] OCGA § 16-7-1 (b).

[2] OCGA § 16-10-24 (a).

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict[,] and an appellant no longer enjoys the presumption of innocence."[3]

So viewed, the record shows that Perez lived in a mobile home park next door to the Mendoza family. One morning, the children went to school and the parents left for work, leaving eleven-year-old Dana with her four-year-old brother alone in the home. Dana had stayed home sick that day with the understanding that an older relative would come look after her and her brother. Soon after her parents left, Dana heard Perez walking on the front porch and observed him looking into the home's windows. Alarmed, she used a phone left with her by her father, Manuel, to call her mother, who instructed her to take pictures of the man and then lock her brother and herself in the bathroom. Dana complied, and while the mother called the police and raced home, Perez broke a window, entered the home, and walked through each room. Perez broke the locked bedroom door and then the locked bathroom door where Dana was hiding with her brother. As Perez attempted to grab Dana, they both heard a car horn honking and tires screeching into the parking area as Dana's mother arrived. Perez fled out the front door, where Dana's mother saw him jump off the porch as she

---

[3] *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

climbed the stairs to find Dana. She found Dana and her brother unhurt but terrified and observed the broken window and interior doors, blood throughout the home, and nothing missing.

A police officer arrived to find Dana's father, who had just arrived, tussling with Perez outside his home, and, after a struggle between the officer and Perez, the officer was able to handcuff him on the ground. A second officer soon arrived and helped secure the scene. When asked by police, Dana identified Perez as the man she saw in the home.

Perez was charged with burglary for entering the home with the intent to commit cruelty to children[4] and with felony obstruction for struggling with the arresting officer. A jury trial was held, and Perez was found guilty of burglary and, as to obstruction, the lesser included misdemeanor offense. He moved for a new trial, which motion was denied, giving rise to this appeal.

1. Perez contends that the trial court erroneously admitted evidence that he had, in the weeks leading up to the burglary, followed Dana's 15-year-old sister as she walked home from the school bus. The girl described it as a scary event based on the

---

[4] See OCGA § 16-5-70 (b) ("Any person commits the offense of cruelty to children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain.").

way Perez looked at her and spoke to her and because he was much older. The State argues that the evidence was relevant to show Perez's motive for breaking into the house, and Perez now argues that the prior difficulty was inadmissible under the applicable rule of evidence, OCGA § 24-4-404 (b), because it attacked his character as being a pedophile.[5] OCGA § 24-4-404 (b), which was effective at the time of the July 2013 trial in this case,[6] provides as follows:

> Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan,

---

[5] We note that whether or not Perez had a sexual motive, the evidence that he pursued Dana through two locked doors and was grabbing her when he was interrupted by the arrival of Dana's mother sufficed to show an intent to commit cruelty to children by causing Dana cruel or excessive physical or mental pain. See *Ferrell v. State*, 283 Ga. App. 471, 474-475 (2) (641 SE2d 658) (2007) ("For purposes of [cruelty to children], malice in the legal sense imports the absence of all elements of justification or excuse and the presence of an actual intent to cause the particular harm produced, or the wanton and wilful doing of an act with an awareness of a plain and strong likelihood that such harm may result. Whether a defendant intended his actions is a question of fact to be determined by the jury upon consideration of words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted. We will affirm the jury's finding of intent unless clearly erroneous.") (footnotes and punctuation omitted).

[6] See Ga. L. 2011, p. 99, § 101 (providing that Georgia's new Evidence Code applies "to any motion made or hearing or trial commenced on or after" January 1, 2013).

knowledge, identity, or absence of mistake or accident. The prosecution in a criminal proceeding shall provide reasonable notice to the defense in advance of trial, unless pretrial notice is excused by the court upon good cause shown, of the general nature of any such evidence it intends to introduce at trial. Notice shall not be required when the evidence of prior crimes, wrongs, or acts is offered to prove the circumstances immediately surrounding the charged crime, motive, or prior difficulties between the accused and the alleged victim.

Pretermitting whether admitting the evidence was error, we note that Perez did not voice any objection at trial to the description of him following the older sister. In light of this waiver, his enumeration is limited to review for plain error, as authorized by Georgia's evidence Code.[7]

A plain error is one that is so clearly erroneous that it creates a likelihood of a grave miscarriage of justice or seriously affects the fairness, integrity, or public reputation of the judicial proceeding. To

---

[7] See OCGA § 24-1-103 (a) (1) ("[e]rror shall not be predicated upon a ruling which admits or excludes evidence *unless* a substantial right of the party is affected *and . . . a timely objection . . . appears of record*, stating the specific ground of objection,") (emphasis supplied); (d) ("Nothing in this Code section shall preclude a court from taking notice of plain errors affecting substantial rights although such errors were not brought to the attention of the [trial] court."); *U. S. v. Dolomon*, 569 Fed. Appx. 889, 893 (IV) (11th Cir. Fla. 2014) (reviewing admissibility of character evidence for plain error absent timely objection at trial). See generally *Rembert v. State*, 324 Ga. App. 146, 152, n. 8 (2) (749 SE2d 744) (2013) (noting availability of plain error review after the adoption of Georgia's new Evidence Code).

5

demonstrate plain error, an appellant must show that the error caused him harm, i.e., that the error likely affected the outcome at trial.[8]

At trial, Perez's defense was to deny that he was the perpetrator of the burglary and clarify that he remained outside of the Mendoza home looking for Manuel with whom he had an ongoing dispute over a physical altercation. But there was evidence from Ms. Mendoza, Perez's neighbor, that she personally saw him fleeing her home when she drove up in response to Dana's fearful telephone call. Further, her husband identified Perez as the man in the photographs taken by Dana as he prowled around their house before breaking in. And Dana identified Perez to police and at trial as the man who broke into the home and attempted to grab her. Finally, there was blood strewn throughout the home and Perez was observed by several witnesses to be bleeding from cuts on his arm consistent with those made by glass. In light of this ample and unrefuted evidence,[9] Perez fails to show that the outcome of the trial was

---

[8] (Citation and punctuation omitted.) *Crapps v. State*, __ Ga. App. __, __ (2) (766 SE2d 178) (2014).

[9] Perez's mother, with whom he lived, testified at trial. She could not provide an alibi for Perez, only noting that he was "in and out" of their mobile home that morning.

likely affected by any improper light shed on him by the description of him inappropriately heckling the older sister.[10]

2. Perez next argues that the trial court erroneously excluded a photograph of a scar on his shoulder that he took after the close of the State's evidence. He explained that he did not want to testify, but his mother, who did testify, could authenticate the photograph and explain that he resisted arrest because he was in pain from his recent shoulder surgery. The trial court excluded the photograph on the ground that admitting it would be tantamount to allowing Perez to testify without being cross-examined. Pretermitting the correctness of this ruling, Perez did call his mother to testify, and she explained that Perez had undergone shoulder surgery just prior to the arrest. Therefore, the excluded photograph was cumulative of this testimony, and its exclusion does not warrant reversal.[11]

---

[10] There was no evidence that Perez believed the older sister to be home at the time of the burglary.

[11] See *Cannon v. State*, 288 Ga. 225, 226 (2) (702 SE2d 845) (2010) ("Evidence wrongfully [excluded] is harmless where admissible evidence of the same fact is introduced.") (punctuation omitted).

3. Perez also contends that he received ineffective assistance of counsel at trial. Under *Strickland v. Washington*,[12] to succeed on an ineffective assistance claim, a criminal defendant must demonstrate both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance.[13] "There is a strong presumption that the performance of trial counsel falls within the wide range of reasonable professional assistance. The reasonableness of the conduct is viewed at the time of trial and under the circumstances of the case."[14] If an appellant fails to meet his burden of proving either prong of the *Strickland* test, the reviewing court need not examine the other prong.[15] In reviewing the trial court's decision, "[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts."[16]

---

[12] 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

[13] See id. at 687-688, 694 (III) (A)-(B).

[14] (Citation and punctuation omitted.) *Williams v. State*, 277 Ga. 853, 857 (6) (596 SE2d 597) (2004).

[15] See *Strickland*, 466 U. S. at 697 (IV); *Fuller v. State*, 277 Ga. 505, 507 (3) (591 SE2d 782) (2004).

[16] (Punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

(a) Perez first argues that his trial counsel failed to effectively communicate with his client due to a language barrier. But at the motion for new trial hearing, both Perez and his trial counsel testified. When asked, "Are you sure you understood everything [trial counsel] was saying to you," Perez responded in the affirmative, also explaining, "I can speak a little bit of English." Perez's trial counsel likewise explained that throughout the trial and in all but one or two of his private meetings with Perez, he had a court-appointed interpreter with him, and Perez never gave him any indication that he did not understand their conversations. Based on this record, we discern no deficient performance with respect to trial counsel's communications with Perez.

(b) Perez next argues that his trial counsel exerted undue influence over his choice not to testify at trial.

> A criminal defendant has a constitutional right to testify in his or her defense, that right is personal to the defendant, and the decision whether to testify is made by the defendant after consultation with counsel. Defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide. This advice is crucial because there can be no effective waiver of a fundamental constitutional right unless there is an

"intentional relinquishment or abandonment of a known right or privilege.[17]

Trial counsel did not have a specific recollection of his advice to Perez, but counsel explained that his standard practice "to tell any client . . . that it's their decision whether to take the stand and testify or not. I tell them of the advantages of taking the stand and the disadvantages of taking the stand, and beyond that, I'll let them make the decision." At the hearing, Perez stated that his counsel had told him that it would be "dangerous" and "counter productive" to testify despite his wish to do so. Finally, the trial transcript contains a colloquy between Perez and the trial court, during which the court advised Perez that the decision to testify was his and his alone, that no one could stop him from testifying or force him to testify, that if he decided not to testify the court would instruct the jury not to hold it against him, and if he did testify he would be examined by both the State's counsel and his own. After the colloquy, Perez personally declined to testify.

"Assuming a discrepancy in the testimony between [Perez] and his counsel, it is the function of the trial court at the hearing on the motion for new trial to determine

---

[17] (Citations and punctuation omitted.) *Thornton v. State*, 292 Ga. 796, 798 (2) (a) (741 SE2d 641) (2013).

10

witness credibility and to resolve any conflicts in the testimony."[18] The record before us supports the trial court's rejection of Perez's ineffective assistance claim on this ground.[19]

(c) Perez also bases his claim on his trial counsel's failure to object to the evidence of him following the 15-year-old sister, but for the reasons stated in Division 1, he cannot meet his burden to show harm under *Strickland*.

(d) Perez contends that his trial counsel failed to adequately investigate the case and call the appropriate witnesses to show that Perez previously had been attacked at the behest of Manuel prior to the scuffle after the burglary. This, Perez argues, would have allowed him to argue that he was looking for Manuel to confront him about the prior incident, not burglarize their home. Despite Perez's argument on appeal, this alternative defense theory could also be used by the jury as demonstrating a motive to burglarize the Mendoza home. Further, trial counsel explained that he did investigate the crime, including visiting the scene and speaking to the witnesses in

---

[18] *Mobley v. State*, 264 Ga. 854, 856 (2) (452 SE2d 500) (1995).

[19] See *Thornton*, 292 Ga. at 798 (2) (a), n. 2 (noting the appellant's affirmative response to the trial court's inquiries about his understanding of his right to testify).

question. After interviewing them, he decided based on trial strategy that they would be more damaging than helpful.

> Deciding which witnesses to call is a matter of trial strategy and tactics, and because appellant failed to show that the strategic decisions made by his counsel with respect to witnesses were so patently unreasonable that no competent attorney would have chosen them, the trial court did not err in finding trial counsel's performance in this regard was not constitutionally deficient.[20]

(e) Finally, "[because Perez] has failed to demonstrate any prejudice resulting from counsel's alleged errors, his reliance on *Schofield v. Holsey*[21] for the proposition that [the cumulative effect of the alleged errors warrants reversal] . . . is meritless."[22]

*Judgment affirmed. Miller and Dillard, JJ., concur.*

---

[20] *Miller v. State*, 295 Ga. 769, 772 (2) (a) (i) (764 SE2d 135) (2014).

[21] 281 Ga. 809 (642 SE2d 56) (2007).

[22] (Punctuation omitted.) *Mora v. State*, 295 Ga. App. 641, 649 (3) (g) (673 SE2d 23) (2009).