**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY, and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**May 6, 2015**

# In the Court of Appeals of Georgia

A15A0155. GIPSON v. THE STATE.

BARNES, Presiding Judge.

A jury found Jay Adam Gipson guilty of aggravated assault with an offensive weapon, aggravated assault with intent to murder, aggravated battery, and battery. The trial court thereafter denied his motion for new trial. On appeal, Gipson argues that there was insufficient evidence to convict him of aggravated assault with intent to murder and that the count of the indictment for that offense was fatally defective. Gipson further argues that the trial court erred in allowing expert testimony regarding the typical characteristics of domestic abuse victims and the cyclical nature of domestic abuse; in allowing the State to cross-examine Gipson about a religious emblem he was wearing; in its charge to the jury on aggravated battery; in its recharge to the jury on the definition of "intent to kill"; and in failing to merge his convictions for aggravated assault with intent to murder and battery into his conviction for aggravated assault with an offensive weapon. Lastly, Gipson argues

that his trial counsel rendered ineffective assistance in several respects. For the reasons discussed below, we affirm.

On appeal after a criminal conviction, the defendant is no longer presumed innocent, and we view the evidence in the light most favorable to the verdict. *Anthony v. State*, 317 Ga. App. 807 (732 SE2d 845) (2012). So viewed, the evidence showed that Gipson and the victim were involved in a tumultuous relationship lasting over a year. During that time period, Gipson violently attacked and injured the victim several times when the two argued. On one occasion in September 2012, Gipson grabbed the legs of the chair in which the victim was sitting and pulled the legs toward him, causing the victim to fall backward and fracture one of her vertebrae. The victim went to the hospital several times for treatment for the back injury she sustained.

Subsequently, on the morning of April 9, 2013, Gipson and the victim were walking to the house of some friends when they began to argue. Gipson suggested that they take a short cut to their friends' house by walking down a path through the woods. Although the victim was apprehensive of walking down the secluded path with Gipson, she agreed to do so. As they proceeded down the path, Gipson suddenly began beating, kicking, and pushing the victim, causing her to fall to the ground.

2

Once the victim was on the ground, Gipson repeatedly kicked her and struck her with several tree limbs lying near the path. Gipson would strike the victim with a tree limb until it broke, and then would pick up another one and begin striking her with it. When Gipson ultimately stopped beating the victim, she was barely able to walk but managed to follow him out of the woods to their friends' house.

When Gipson and the victim arrived at their friends' house, one of their friends opened the front door, saw the victim's condition, and was "shocked." The friend later testified that the victim was severely swollen and bruised and looked like she had been "beat[en] up." The friend took the victim to the hospital, where she was treated for the swelling and the severe bruises on her arms, legs, and back. The victim was released from the hospital later that day, but was so sore that she stayed in bed for two weeks to recover. One of the bruises left a permanent scar on her arm.

The emergency room physician who treated the victim later testified that the victim's bruises on her arms, legs, and back were some of the worst he had ever seen in his seventeen years of experience. The physician ordered an ultrasound of the victim's bruised left arm because it was "so huge and swollen," and he was concerned that the bruising might be compressing a deep vein and lead to a blood clot, which could become dislodged and result in a fatal pulmonary embolism. The ultrasound

was negative for a blood clot, but the physician believed the victim needed follow-up treatment because of the severity of the injury. The physician also testified that in his years of practicing emergency medicine and evaluating assault victims, he had never ordered a CPK test, which measures muscle breakdown to determine if there is a risk of kidney damage, but he chose to do so in this case because of the severity of the victim's bruising. The results of the testing showed that the victim's CPK level was elevated, although not to the point where her kidneys were in danger. Lastly, the physician testified that victim's injuries were consistent with someone receiving a severe beating with a tree limb or being kicked hard.

Based on Gipson's attack of the victim on the wooded path on April 9, 2013, Gipson was indicted on charges of aggravated assault with an offensive weapon (Count 1), battery (Count 2), and aggravated assault with intent to murder (Count 3). Gipson also was indicted for aggravated battery (Count 5) based on the September 2012 incident when he caused the victim to fall from a chair and fracture one of her vertebrae.[1]

---

[1] Gipson was indicted for theft by taking (Count 4) and another count of battery (Count 6), but the jury acquitted him of theft by taking, and the trial court directed a verdict of acquittal on the battery count.

At the ensuing jury trial, the victim described the attacks that formed the basis for the charges in the indictment. The victim also testified to prior difficulties between her and Gipson, including an incident when Gipson beat the victim with a metal ladder and a silver chain necklace, resulting in multiple abrasions and bruises, and another incident when he bruised the victim's ribs by kicking her. Among other witnesses, the State also called the victim's friend who took her to the hospital after the April 9th attack on the wooded path, the emergency room physician who treated her after the attack, and the executive director of a domestic violence shelter who provided expert testimony regarding the typical characteristics of domestic abuse victims and the cycle of domestic abuse. The State also introduced photographs of the extensive bruising suffered by the victim as a result of the April 9th attack. After the State rested, Gipson elected to testify in his own defense and denied having ever physically attacked the victim.

After hearing all the evidence, the jury found Gipson guilty under Counts 1-3 and 5 of the indictment. The trial court declined to merge any of the offenses and sentenced Gipson to a total of 40 years, with the first 15 years served in confinement and the remainder on probation. Gipson filed a motion for new trial, asserting, among other things, that his trial counsel rendered ineffective assistance of counsel. After

conducting an evidentiary hearing where Gipson's trial counsel testified, the trial court denied the motion for new trial, resulting in this appeal.

1. Gipson challenges the sufficiency of the evidence only as to Count 3 of the indictment, which charged him with aggravated assault with intent to murder based on the April 9, 2013 attack of the victim on the wooded path. Gipson does not contest that there was evidence that he assaulted the victim; rather, he maintains that there was insufficient evidence for a jury to find that he acted with the intent to kill her. We are unpersuaded.

In addressing a challenge to the sufficiency of the evidence, we do not weigh the evidence, resolve conflicts in the testimony, or evaluate the credibility of the witnesses. *Rollins v. State*, 318 Ga. App. 311 (733 SE2d 841) (2012). Instead, we ask only whether the evidence was sufficient to prove each element of the charged crime beyond a reasonable doubt, and "[a]s long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the [S]tate's case, the jury's verdict will be upheld." (Citation omitted.) Id. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

> To authorize a conviction for aggravated assault with intent to murder, the State must show that the defendant acted with the deliberate intent

6

to kill at the time of the assault, which the jury may infer from the nature
of the instrument used in making the assault, the manner of its use, and
the nature of the wounds inflicted.

(Citation and punctuation omitted.) *Grant v. State*, 326 Ga. App. 121, 122 (1) (756 SE2d 255) (2014). See OCGA § 16-5-21 (a) (1);[2] *Tanner v. State*, 86 Ga. App. 767 (1) (72 SE2d 549) (1952). Intent may be inferred from all of the circumstances surrounding the assault, *Jordan v. State*, 322 Ga. App. 252, 254 (2) (744 SE2d 447) (2013), and the question whether the defendant acted with the requisite intent is ordinarily for the jury to determine. *Campbell v. State*, 314 Ga. App. 299, 302 (724 SE2d 24) (2012).

The evidence in the present case, construed in favor of the State, showed that Gipson lured the victim down a secluded path while arguing with her, where he repeatedly kicked her and struck her with tree limbs. The victim could barely walk after the attack, had to be taken to the emergency room at the hospital, and was treated for bruising to her arms, legs, and back that was so severe that the treating physician was concerned that she was at risk of a pulmonary embolism or kidney

---

[2] OCGA § 16-5-21 was amended effective July 1, 2014. See Ga. L. 2014, pp. 432, 438, § 2-2; pp. 441, 445, 450, §§ 2, 3; and pp. 599, 622, § 3-1. Here, we apply the prior version of the statute, Ga. L. 2011, p. 752, § 16, effective May 13, 2011.

damage. In light of these combined circumstances, we conclude that a reasonable jury was entitled to find beyond a reasonable doubt that Gipson acted with the intent to kill the victim and find him guilty of aggravated assault with intent to murder. See, e.g., *Tanner*, 86 Ga. App. at 767 (1), (3) (throwing "some kind of blunt instrument like a rock" at the victim, resulting in severe injury, supported inference that defendant acted with intent to kill); *Thomas v. State*, 75 Ga. App. 334 (43 SE2d 352) (1947) (striking victim with brass knuckles, resulting in severe injury, supported inference that defendant acted with intent to kill).

2. Gipson also argues that Count 3 of the indictment was fatally defective because it did not specify the deadly weapon used by Gipson during the attack of the victim on the wooded path. But Gipson did not raise this issue in the trial court by a timely general or special demurrer, or after trial by a timely motion in arrest of judgment. "The failure to file a general or special demurrer, or a timely motion in arrest of judgment, waives any claim that could have been raised in a general or special demurrer. Accordingly, this enumeration presents nothing for review." (Punctuation and footnote omitted.) *Walker v. State*, 329 Ga. App. 369, 372-373 (2) (765 SE2d 599) (2014).

In any event, we are unpersuaded by Gipson's challenge to the indictment. Count 3 of the indictment charged Gipson with aggravated assault with intent to murder under the former version of OCGA § 16-5-21 (a) (1),[3] not with aggravated assault with a deadly weapon under subsection (a) (2). Aggravated assault with intent to murder requires proof that the defendant committed a simple assault in one of the two ways defined in OCGA § 16-5-20 (a)[4] and acted with the intent to kill the victim. See *Guyse v. State*, 286 Ga. 574, 576 (2) (690 SE2d 406) (2010) (discussing elements of aggravated assault); *Grant*, 326 Ga. App. at 122 (1) (aggravated assault with intent to murder requires proof of intent to kill at the time of the assault).

Count 3 alleged that on April 9, 2013, Gipson "did unlawfully then and there make an assault upon the person of [the victim] with the intent to kill, contrary to the laws of this State, the good order, peace and dignity thereof." The State was not required to specify the manner in which Gipson committed the simple assault upon the victim; it was sufficient for the State to allege "the aggravating aspect of the

---

[3] See supra footnote 2.

[4] A defendant commits simple assault if he "[a]ttempts to commit a violent injury to the person of another" or "[c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-20 (a).

9

simple assault," which was that Gipson acted with the intent to kill. *Simpson v. State*, 277 Ga. 356, 358 (3) (589 SE2d 90) (2003). Count 3 of the indictment was sufficient to put Gipson on notice that he could be convicted of aggravated assault if he committed a simple assault in either manner contained in the simple assault statute, so long as the State proved that he did so with the intent to kill the victim. Gipson's claim that Count 3 was fatally defective is thus without merit.

3. Gipson argues that the trial court erred in allowing expert testimony from the executive director of the domestic violence shelter regarding the typical characteristics of domestic abuse victims and the cyclical pattern of domestic abuse. According to Gipson, the executive director was not qualified to offer an opinion as an expert on those topics and her testimony was irrelevant and impermissibly placed his character in issue.

Gipson failed to object at trial to the expert qualifications of the executor director or to any of her testimony. "Georgia has long followed the contemporaneous objection rule, which provides that counsel must make a proper objection on the record at the earliest possible time to preserve for review the point of error." (Citation and punctuation omitted.) *Fraser v. State*, 329 Ga. App. 1 (763 SE2d 359) (2014). However, because the trial in this case occurred after January 1, 2013, Georgia's new

10

evidence code applies. See Ga. Laws 2011, Act 52, § 101. Under the new code, we "may review the purportedly improper testimony for plain error." (Citation and punctuation omitted.) *Fraser*, 329 Ga. App. at 2. See OCGA § 24-1-103 (d); *Rembert v. State*, 324 Ga. App. 146, 152 (2), n. 8 (749 SE2d 744) (2013). To rise to the high level of plain error, the error must be "one that is so clearly erroneous that it creates a likelihood of a grave miscarriage of justice or seriously affects the fairness, integrity, or public reputation of the judicial proceeding," and the "appellant must show that the error caused him harm, i.e., that the error likely affected the outcome at trial." (Footnote omitted.) *Perez v. State*, __ Ga. App. __ (1) (Case No. A14A1992, decided March 13, 2015).

There was no error, much less plain error, in this case because the trial court properly admitted the executive director's expert testimony. As an initial matter, the trial court acted within its discretion in qualifying the executive director as an expert in matters pertaining to domestic violence.

> To qualify as an expert, generally all that is required is that a person must have been educated in a particular skill or profession; his special knowledge may be derived from experience as well as study. Formal education in the subject at hand is not a prerequisite for expert status. The trial court's ruling on this issue is reviewed only for abuse of discretion.

11

(Citations and punctuation omitted.) *Billings v. State*, 293 Ga. 99, 104-105 (5) (745 SE2d 583) (2013). See *United States v. Roach*, 644 F.3d 763, 764 (8th Cir. 2011) (expertise can be derived from "on-the-job observations and attendance at conferences and seminars" because the federal rules of evidence do "not rank academic training over demonstrated practical experience.").[5]

The executive director of the domestic violence shelter testified that she has been an advocate in the field of domestic violence for over thirteen years. She testified that she obtained her Bachelor's degree in psychology in 1996, has specialized training in domestic violence, and receives a minimum of fifteen hours of additional training and education in the field of domestic violence each year. The executive director further testified that she has given presentations across the community and worked at the state level to advocate on behalf of victims, form public policy, and train others to assist victims, and currently serves as the Board Chairperson for the Georgia Coalition Against Domestic Violence as well as for the

---

[5] "Given the similarity between Georgia's new evidence code and the Federal Rules of Evidence it is proper that we give consideration and great weight to constructions placed on the Federal Rules by the federal courts." (Citation and punctuation omitted.) *Williams v. State*, 328 Ga. App. 876, 879 (1), n.14 (763 SE2d 261) (2014).

Commission on Family Violence. Based on this testimony, the trial court acted well within its discretion in qualifying the executive director as an expert. See *Billings*, 293 Ga. at 105 (5); *Miller v. State*, 273 Ga. App. 761, 764 (3) (615 SE2d 843) (2005).

Nor did the trial court err in permitting the executive director to testify about the typical characteristics of domestic abuse victims and the cycle of domestic abuse. "Expert testimony is admissible to explain the behavior of a domestic violence victim who does not report abuse or leave the abuser." (Footnote omitted.) *Moorer v. State*, 290 Ga. App. 216, 217 (1) (659 SE2d 422) (2008). When cross-examining the victim in this case, Gipson's trial counsel attempted to undermine her credibility by emphasizing that despite the allegations of abuse, the victim had not left Gipson, had not tried to stop the abuse, and had lied to others about what had occurred rather than report the abuse. Under these circumstances, the executive director's testimony did not improperly place Gipson's character in issue and was relevant "because the reasons that a victim would not immediately leave after a violent event or report the abuse are beyond the ken of the average layperson." Id. See *Works v. State*, 301 Ga. App. 108, 112 (4) (686 SE2d 863) (2009) (expert testimony regarding "the cycle of domestic violence and the behavior of domestic violence victims" was admissible to explain the victim's contradictory statements about what had occurred); *Alvarado v.*

13

*State*, 257 Ga. App. 746, 748 (2) (572 SE2d 18) (2002) (expert testimony regarding battered person syndrome and the cycle of violence in an abusive relationship was admissible to explain victim's failure to report the abuse); *Parrish v. State*, 237 Ga. App. 274, 277 (2) (i) (514 SE2d 458) (1999) (expert testimony regarding "learned helplessness" of domestic abuse victims was admissible to explain the victim's behavior). Accordingly, the trial court committed no error, much less plain error in admitting the executive director's expert testimony.[6]

---

[6] Gipson also argues that executive director's testimony was improper because the director did not personally interview the victim and was not asked any hypothetical questions by the prosecutor. But the fact that the executive director did not personally interview the victim went only to the weight, not the admissibility, of her testimony. See *Parrish*, 237 Ga. App. at 277-278 (2) (iii) & (iv) (fact that expert did not personally examine domestic abuse victim did not render the expert's testimony inadmissible). See also *United States v. Vallejo*, 237 F.3d 1008, 1021 (9th Cir. 2001) (district court erred in excluding expert testimony of school psychologist on ground that he did not personally examine the defendant); *United States v. Bighead*, 128 F.3d 1329, 1330 (9th Cir. 1997) (per curiam) (expert testimony regarding common characteristics of abuse victims was admissible even though expert did not personally examine the victim in the case). Furthermore, hypothetical questions are allowed, but not required, under the new evidence code. See Paul S. Milich, Ga. Rules of Evidence, § 15:6, p. 510 (2013–2014 ed.); OCGA § 24-7-705; *Taylor v. Burlington Northern R. Co.*, 787 F.2d 1309, 1317 (9th Cir. 1986) ("Federal Rule of Evidence 705 largely eliminates the need for counsel to ask [hypothetical] questions, because the rule permits an expert to testify as to his opinion without counsel's providing him with a factual basis for it.").

4. Gipson also contends that the State improperly placed his character in issue by questioning him about a religious emblem he was wearing during cross-examination. As with the prior enumeration of error, Gipson failed to object at trial to his cross-examination by the State, and thus he must show that the trial court committed plain error by allowing the prosecutor's questions. See OCGA § 24-1-103 (d); *Fraser*, 329 Ga. App. at 2.

During cross-examination, the prosecutor pointed out that Gipson was wearing a Christian cross and insinuated through a series of questions that Gipson was a hypocrite in light of his abusive conduct towards the victim. While the prosecutor's questioning of Gipson was argumentative and improper, Gipson has failed to show that the questions, when viewed in the context of the trial as a whole, seriously affected the fairness, integrity, or public reputation of the proceedings or likely affected the outcome. Hence, Gipson has failed to show that the trial court's error in permitting the prosecutor's questions rose to the level of plain error. See *Perez*, __ Ga. App. at __ (1) (Case No. A14A1992).

5. Gipson maintains that the trial court erred in its charge to the jury on aggravated battery. OCGA § 16-5-24 (a) provides: "A person commits the offense of aggravated battery when he or she maliciously causes bodily harm to another by

15

depriving him or her of a member of his or her body, by rendering a member of his or her body useless, *or* by seriously disfiguring his or her body or a member thereof." (Emphasis supplied.) Count 5 of the indictment alleged that Gipson committed aggravated battery in September 2012 "by depriving [the victim] of a member of . . . her body, by rendering a member of said [victim's] body useless, *and* by seriously disfiguring . . . her body and a member thereof" when he caused the victim to fall backward out of the chair and fracture one of her vertebrae. (Emphasis supplied.) The trial court read the indictment to the jury and charged the jury on the full statutory definition of aggravated battery set forth in OCGA § 16-5-24 (a).

Gipson argues for the first time on appeal that the aggravated battery charge was not properly tailored to the indictment or adjusted to the evidence. Because Gipson did not object at trial to the aggravated battery charge, we review the charge only for plain error. See OCGA § 17-8-58 (b); *Booker v. State*, 322 Ga. App. 257, 260 (2) (744 SE2d 429) (2013).

> Reversal based on plain error is authorized [only] if the instruction was erroneous, the error was obvious, the instruction likely affected the outcome of the proceedings, and the error seriously affects the fairness, integrity or public reputation of judicial proceedings. Satisfying all four prongs of this standard is difficult, as it should be.

16

(Citation and punctuation omitted.) *Booker*, 322 Ga. App. at 260 (2). See *White v. State*, 291 Ga. 7, 8 (2) (727 SE2d 109) (2012); *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011).

There was no error in the trial court's charge on aggravated battery, and certainly no plain error. "If a crime may be committed in more than one way, it is sufficient for the State to show that it was committed in any one of the separate ways listed in the indictment, even if the indictment uses the conjunctive rather than disjunctive form." (Citation and punctuation omitted.) *Bray v. State*, 330 Ga. App. 768, 772 (1) (768 SE2d 285) (2015). Thus, because the indictment alleged that Gipson committed aggravated battery by depriving the victim of a member of her body, rendering a member of her body useless, and seriously disfiguring her body and a member thereof, the State could prove that Gipson committed the offense in any of those three ways. Id. Consequently, it was proper for the trial court to charge the jury on the full statutory definition of aggravated battery as set forth in OCGA § 16-5-24 (a), which delineated the three alternative ways the offense could be committed. See *Stander v. State*, 226 Ga. App. 495, 496-497 (1) (486 SE2d 712) (1997). Compare *Hopkins v. State*, 255 Ga. App. 202, 204-206 (2) (564 SE2d 805) (2002) (indictment only alleged that defendant committed aggravated assault by seriously disfiguring the

17

victim's arm, but the trial court charged the jury on the full statutory definition of aggravated battery). Moreover, the trial court also charged the jury that the burden was on the State "to prove every material allegation of the indictment and every material element of the crime charged beyond a reasonable doubt." Under these circumstances, the jury instructions were properly tailored to the indictment and the evidence, and Gipson has failed to show that the trial court committed plain error.

6. Gipson also maintains that the trial court erred in its recharge to the jury in response to the jury's question about the definition of "intent to kill." After beginning its deliberations, the jury sent a note to the trial court inquiring whether "intent to kill" meant "beating so bad [the victim] could die" or "premeditated intent to kill." In response, the trial court recharged the jury using the pattern instructions for aggravated assault with intent to commit murder, criminal intent, and "no presumption of criminal intent." See 2 Ga. Jury Instructions - Criminal §§ 1.41.10; 1.41.11; and 2.20.20.

Gipson contends that the trial court's recharge to the jury was erroneous because the court did not include the definition of a deadly weapon as part of its recharge. His contention is without merit. Again, Gipson did not object to the recharge, and thus we review his claim only for plain error. *Guajardo v. State*, 290

18

Ga. 172, 175-176 (4) (718 SE2d 292) (2011). And there was no error in the trial court's recharge, plain or otherwise. Intent to kill is an element of aggravated assault with intent to murder (as alleged in Count 3 of the indictment), see *Grant*, 326 Ga. App. at 122 (1), not aggravated assault with a deadly weapon (as alleged in Count 1 of the indictment). See *Chapman v. State*, 275 Ga. 314, 317 (3) (565 SE2d 442) (2002). Thus, the jury was asking a question that pertained only to the charge for aggravated assault with intent to murder, and the inclusion of a charge on the definition of a deadly weapon in this context would have been inapposite and potentially confusing. Accordingly, the trial court did not commit plain error by omitting a charge on the definition of a deadly weapon from its recharge to the jury on intent to kill. See generally *Boynton v. State*, 277 Ga. 130, 131 (2) (587 SE2d 3) (2003) ("When a jury requests additional instructions on a point of law, the trial court in its discretion can recharge in full or limit its recharge to the scope of the jury's request.").

7. Gipson next argues that the trial court erred in failing to merge his convictions for battery (Count 2) and aggravated assault with intent to murder (Count 3) into his conviction for aggravated assault with an offensive weapon (Count 1) for purposes of sentencing. We disagree.

19

"It is axiomatic that Georgia law bars conviction for a crime that arises from the same criminal conduct included as a matter of fact or as a matter of law in another crime for which the defendant has been convicted." (Citation and punctuation omitted.) *Crowley v. State*, 315 Ga. App. 755, 759 (3) (728 SE2d 282) (2012). When the same act or transaction violates two statutes, we apply the "required evidence" test adopted in *Drinkard v. Walker*, 281 Ga. 211, 215 (636 SE2d 530) (2006), to determine whether one crime is included in the other under OCGA § 16-1-6 (1). See *Southwell v. State*, 320 Ga. App. 763, 764 (1) (740 SE2d 725) (2013).

> Under the required evidence test, neither offense is included in the other if each statutory provision requires proof of a fact which the other does not. Consequently, when each of two statutes requires proof of an additional fact which the other does not, an acquittal or conviction under one statute does not exempt the defendant from prosecution and punishment under the other, even though the charges are based on a single act.

(Citation and punctuation omitted.) *Petro v. State*, 327 Ga. App. 254, 259 (2) (758 SE2d 152) (2014). In applying the required evidence test, "we consider the crimes as indicted and not every possible manner of committing a particular crime." *Franks v. State*, 325 Ga.App. 488, 495 (3), n. 8 (758 SE2d 152) (2013).

20

Here, Count 1 of the indictment alleged that on April 9, 2013, Gipson "did unlawfully then and there make an assault upon the person of [the victim], with an object which was likely to result in serious bodily injury to said [victim], by striking said [victim] with the limb and stick, contrary to the laws of this State, the good order, peace and dignity thereof." Count 2 alleged that on April 9, 2010, Gipson "did unlawfully then and there intentionally cause visible bodily harm to [the victim], contrary to the laws of this State, the good order, peace and dignity thereof." As previously noted, Count 3 alleged that on April 9, 2013, Gipson "did unlawfully then and there make an assault upon the person of [the victim] with the intent to kill, contrary to the laws of this State, the good order, peace and dignity thereof."

(a) We conclude that under the required evidence test, Gipson's conviction for battery did not merge into his conviction for aggravated assault with an offensive weapon. As alleged in the indictment, battery required proof of a fact – visible physical harm to the victim – that aggravated assault with an offensive weapon did not, and aggravated assault with an offensive weapon required proof of a fact – the use of a tree limb or stick, an object that was likely to result in serious bodily injury to the victim – that battery did not. See OCGA §§ 16-5-21 (a) (2); 16-5-23.1 (a). Hence, under the required evidence test, Gipson's convictions for battery and

21

aggravated assault with an offensive weapon did not merge. See *Kelley v. State*, 248 Ga. App. 721, 723 (1) (548 SE2d 357) (2001) (aggravated assault under OCGA § 16-5-21 (a) (2) and battery under OCGA § 16-5-23.1 (a) have different required elements).

(b) We likewise conclude that under the required evidence test, Gipson's two aggravated assault convictions did not merge.[7] As alleged in the indictment, aggravated assault with intent to murder required proof of a fact – the intent to kill – that aggravated assault with an offensive weapon did not, and aggravated assault with an offensive weapon required proof of a fact – use of the tree limb or stick, an object that was likely to result in serious bodily injury to the victim – that aggravated assault with intent to murder did not. See OCGA §§ 16-5-21 (a) (1), (2). The trial

---

[7] When a defendant is convicted for multiple violations of a "single statutory provision," the required evidence test enunciated in *Drinkard* does not apply; instead, courts, in determining whether multiple convictions are permissible, must determine the "'unit of prosecution,' or the precise act or conduct that is being criminalized under the statute." *State v. Marlowe*, 277 Ga. 383, 384 (589 SE2d 69) (2003). In the recent case of *Thomas v. State*, 292 Ga. 429, 434 (5) (738 SE2d 571) (2013), our Supreme Court applied the required evidence test, rather than the unit of prosecution test, in determining whether a defendant could be convicted of aggravated assault under both OCGA §§ 16-5-21 (a) (1) and (a) (2) for the same act or transaction. Thus, as made clear by *Thomas*, we are to apply the required evidence test in evaluating whether Gipson's convictions under OCGA §§ 16-5-21 (a) (1) and (a) (2) should have been merged for purposes of sentencing.

court therefore did not err in sentencing Gipson on both counts of aggravated assault. See *Thomas*, 292 Ga. at 434 (5) (aggravated assault convictions under OCGA §§ 16-5-21 (a) (1) and (a) (2) did not merge under the required evidence test). Compare *Jeffrey v. State*, __ Ga. __ (__ SE2d __) (Case No. S14A1418, decided March 16, 2015) (multiple convictions for aggravated assault *with a deadly weapon* merged for purposes of sentencing).[8]

8. Gipson contends that his trial counsel was ineffective in several respects. To prevail on his claim of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984), Gipson "must show both that his counsel performed in a professionally

---

[8] We note that in *Thomas v. State*, 310 Ga. App. 404, 410 (5) (714 SE2d 404) (2011), this Court applied the unit of prosecution test in determining whether a defendant's convictions for aggravated assault with intent to murder and aggravated assault with a deadly weapon should have been merged for sentencing. Notably, one of the judges concurred in the judgment only in *Thomas*, and thus the case, which was decided before the Supreme Court's recent (unrelated) *Thomas* decision, is physical precedent and thus not binding in subsequent cases. See Court of Appeals Rule 33 (a). Additionally, *Mitchell v. State*, 187 Ga. App. 40, 44 (4) (369 SE2d 487) (1988), was decided before *Drinkard* and used language consistent with the "actual evidence" test in analyzing whether the defendant's convictions for aggravated assault with intent to murder and aggravated assault with a deadly weapon should have merged; thus, any reliance on that case would be misplaced. See *Petro*, 327 Ga. App. at 261 (2) (rejecting appellant's reliance on pre-*Drinkard* cases applying "actual evidence" test in addressing merger issue).

deficient manner and that there is a reasonable probability that, but for such deficiency, the result of his trial would have been different." *Smith v. State*, 292 Ga. 620, 621 (2) (740 SE2d 158) (2013). If Gipson fails to carry his burden of proving either prong of the *Strickland* test, we need not examine the other prong. *Watson v. State*, 289 Ga. 39, 45 (12) (709 SE2d 2) (2011). "In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citation and punctuation omitted.) Id. With these principles in mind, we turn to Gipson's specific allegations of ineffective assistance.

(a) Gipson first argues that his trial counsel was ineffective because the Public Defender's Office where he worked misplaced Gipson's case file. But the case file was not misplaced until *after* Gipson was already convicted and sentenced. Hence, Gipson clearly cannot show that the alleged deficiency prejudiced the outcome of his trial.

(b) Gipson next argues that his trial counsel was ineffective for failing to meet with him more often before trial. However, trial counsel testified at the new trial hearing that he met with Gipson several times before trial to discuss his defense and the discovery in the case, including on the morning of trial, and "there is no magic

24

amount of time which counsel must spend in actual conference with his client." (Citation and punctuation omitted.) *Hendricks v. State*, 290 Ga. 238, 242 (4) (c) (719 SE2d 466) (2011). Gipson thus has failed to show that his trial counsel was deficient for failing to meet with him more frequently. Furthermore, "[Gipson] does not describe for us how additional pre-trial communications would have changed the outcome of his trial. Therefore, he also has failed to establish that this alleged instance of ineffectiveness prejudiced his defense." (Citation, punctuation, and footnote omitted.) *Baldivia v. State*, 267 Ga. App. 266, 274 (5) (d) (599 SE2d 188) (2004).

(c) Gipson also argues that his trial counsel was ineffective for failing "to prepare, investigate or subpoena witnesses" on his behalf, but he failed to proffer the testimony of any alleged potential witnesses at the new trial hearing. "Because [Gipson] failed to make such a proffer, it is impossible for him to show there is a reasonable probability the results of the proceeding would have been different, and thus impossible for him to succeed on his ineffective assistance claim." (Citations and punctuation omitted.) *Alvarez v. State*, 309 Ga. App. 462, 466 (3) (710 SE2d 583) (2011).

(d) Gipson further argues that his trial counsel was ineffective for failing to object to the prosecutor's questioning of witnesses "during the course of the trial." Gipson does not point to any specific questions asked by the prosecutor to which his trial counsel should have objected, and he does not support his argument with any citations to the record or legal authority. Consequently, Gipson's unsupported ineffective assistance claim is deemed abandoned. See Court of Appeals Rule 25 (c) (2); *Patterson v. State*, 327 Ga. App. 695, 698 (3) (761 SE2d 101) (2014).

(e) Gipson argues that his trial counsel was ineffective for failing to object to the expert testimony of the executive director of the domestic violence shelter. However, as explained supra in Division 3, the trial court acted within its discretion in qualifying the executive director as an expert and admitting her testimony regarding the typical characteristics of domestic abuse victims and the cycle of domestic abuse. Thus, any objection by trial counsel to the expert's testimony would have been without merit, and "failure to make a meritless objection cannot be evidence of ineffective assistance[.]" (Punctuation and footnote omitted.) *Brown v. State*, 307 Ga. App. 797, 807 (5) (e) (706 SE2d 170) (2011).

(f) Additionally, Gipson argues that his trial counsel was ineffective for failing to move for a mistrial when the trial court temporarily removed Gipson from the courtroom after an outburst. We disagree.

> In the case of disruptive behavior in the courtroom, a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive and disrespectful of the court that his trial cannot be carried on with him in the courtroom. Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concepts of courts and judicial proceedings.

(Footnote omitted.) *Lovelace v. State*, 262 Ga. App. 690, 693 (4) (586 SE2d 386) (2003).

During the cross-examination of a State's witness, Gipson became upset when his trial counsel would not ask certain questions that he had written down for his counsel. The trial court instructed Gipson to wait until the jury left the courtroom before voicing his concern about his trial counsel and warned him, "[D]o not again speak out and interrupt what's going on before the jury." After the jury exited from the courtroom, Gipson's trial counsel agreed to ask the questions written down by

27

Gipson. The jury returned to the courtroom, and trial counsel began cross-examining the witness using the questions written by Gipson, but the trial court sustained the State's objections to the questions, which were argumentative and improper. Gipson then became upset and interrupted the witness's cross-examination, leading the trial court to warn him, "I am going to lock you up outside the presence of the courtroom if you continue that way." Gipson, however, made another outburst, leading the trial court to remove him from the courtroom for a few minutes before allowing him to return. The trial court instructed the jury "not to hold any of that against Mr. Gipson."

The trial court did not err by briefly removing Gipson from the courtroom as a result of his outburst after he was warned about his behavior. See *West v. State*, 271 Ga. App. 522, 523 (610 SE2d 159) (2005); *Lovelace*, 262 Ga. App. at 693 (4). Hence, Gipson has failed to show that he would have been "entitled to a mistrial under the circumstances presented, [and] trial counsel's failure to pursue a meritless motion does not constitute ineffective assistance of counsel." *Boatright v. State*, 308 Ga. App. 266, 269 (1) (a) (707 SE2d 158) (2011).

(g) Gipson argues that his trial counsel was ineffective for failing to object when, during cross-examination, the prosecutor impeached him with his 2004 convictions for felony obstruction of a law enforcement officer. But Gipson failed to

28

raise this claim of ineffective assistance in his motion for new trial and thus has waived the issue on appeal. See *Ransom v. State*, 298 Ga. App. 360, 364 (2) (b) (680 SE2d 200) (2009).

(h) Gipson also argues that his trial counsel was ineffective for failing to object when the prosecutor questioned him about the religious emblem he was wearing during cross-examination. As explained supra in Division 4, the prosecutor's questions were improper. Pretermitting whether trial counsel was deficient for failing to object to the prosecutor's questions, we conclude that Gipson has failed to show a reasonable probability that the outcome of the trial would have been different but for his counsel's alleged deficiency. See *Himmel v. State*, 246 Ga. App. 845, 850 (2) (d) (542 SE2d 57) (2000).

(i) Gipson argues that his trial counsel was ineffective for failing to object to the trial court's recharge to the jury in response to the jury's question about the meaning of "intent to kill." As explained supra in Division 6, there was no error in the trial court's recharge, and thus Gipson cannot show that his trial counsel was deficient for failing to object.

(j) Lastly, Gipson argues that his trial counsel's alleged errors, if considered cumulatively, demonstrate that the representation was so deficient as to constitute

ineffective assistance. "We evaluate only the effects of matters determined to be error, not the cumulative effect of non-errors. Here, even if trial counsel . . . [was] deficient in some respects, there is no reasonable probability that, but for those deficiencies, the outcome of [Gipson's] trial . . . would have been different." (Citations and punctuation omitted.) *Wofford v. State*, 329 Ga. App. 195, 207 (5) (f) (764 SE2d 437) (2014).

*Judgment affirmed. McMillian, J., concurs. Ray, J., concurs in the judgment only in Division 7(b) and fully in all other divisions.*