**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 24, 2016**

# In the Court of Appeals of Georgia

A16A0297. GRAHAM v. THE STATE.                              PE-009C

PETERSON, Judge.

Marshall Martin Graham appeals his convictions for hijacking a motor vehicle and aggravated assault. He argues that (1) the evidence was insufficient to support his convictions; (2) the trial court erred by instructing the jury that the State did not have to prove all of the acts listed in each count of the indictment; and (3) the trial court erred by improperly commenting on the evidence during its instructions to the jury. Because the evidence was sufficient to support Graham's convictions and because the jury instructions of which he complains were not erroneous, we affirm.[1]

---

[1] Without requesting any sanction, Graham notes that the State's brief was filed three days late despite our Court having granted a one-week extension. While noting that Graham filed an amended brief more than a month after filing his original brief, we remind counsel of the importance of our deadlines and exercise our discretion to consider the parties' arguments. *See Daniel v. State*, 296 Ga. App. 513, 522 (7) (675

1. Graham argues that the evidence was insufficient to authorize his convictions, specifically contending that the eyewitness identification evidence was insufficient because the victims gave contradictory descriptions based purely upon race and clothing. We disagree.

When appellate courts review the sufficiency of the evidence, they do not "re-weigh the evidence or resolve conflicts in witness testimony" but instead defer "to the jury's assessment of the weight and credibility of the evidence." *Greeson v. State*, 287 Ga. 764, 765 (700 SE2d 344) (2010) (citation omitted). We determine whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 S. Ct. 2781, 61 LE2d 560) (1979) (citation omitted) (emphasis in original).

So viewed, one of the victims, Bobby, had escorted his mother, Rebecca, to her car at his apartment complex when they were approached by two men, one of whom asked to borrow a cell phone. The request denied, the two men walked off. Bobby called 911 at around 2:01 a.m, reporting that a robbery might be imminent.

---

SE2d 472) (2009).

The men quickly returned, however, and Bobby ended his call. One of the men pressed what appeared to be a handgun to Bobby's temple, telling Bobby to empty his pockets and hand over his wallet. Bobby handed over his wallet, and the gunman nudged him toward the curb of the parking lot. Meanwhile, the other man, who was on the passenger's side of Rebecca's car, entered the car through the back door and began rummaging around the car and Rebecca's pockets. One of the men ordered Rebecca out of the car and the two men drove away in her vehicle. The victims testified that they did not know which man was in which seat when the car departed but said they had not seen the men switching sides of the car.

Around 2:11 a.m., about 10 minutes after Bobby's initial 911 call, a deputy stopped Rebecca's automobile after a brief chase. The driver of the car pulled into a gas station parking lot, stopped, and ran away without ever being apprehended. The deputy found Graham sitting in the passenger seat, with a dark shirt tied around his neck like a bandana. A few small items that Rebecca claimed were hers — a lighter, lip balm, and a broken knife — were in Graham's pants. Rebecca's purse was found on the floor of the vehicle. Rebecca also claimed that between nine and thirteen dollars had been taken from her purse before it was returned to her by police, and thirteen dollars were found in Graham's pants. Bobby's wallet was not found in the

3

car or on Graham. No gun was found on Graham, although a gun was found resting on the console of the car.[2]

At trial, both Bobby and Rebecca provided descriptions of the perpetrators or what they were wearing, although only Rebecca positively identified Graham as one of the hijackers. In his trial testimony, Bobby said the person who approached on the driver's side and put a gun to his head was wearing all black. Bobby said he could see only the gunman's eyes, as though his mouth were covered with some sort of red, black or otherwise dark mask. The perpetrator who approached the passenger's side was wearing red clothing and a red bandana with white polka dots as a mask, Bobby testified. Bobby was not asked to identify Graham at trial.

Rebecca testified that the man who put a gun to her son's head had dark skin and wore all black, including something over his face. She said the other man might have been wearing something red but she did not recall him wearing a mask. In her trial testimony, Rebecca identified Graham as the man who had stood at her driver's side door, holding a gun to her son's head, not the man who walked up on the passenger's side. She explained that she was able to make the identification based on

---

[2] The trial prosecutor stated during the trial that the gun recovered from the car was a pellet gun.

his skin coloring and his eyes, which she described as "sad eyes, down at the corners." Defense counsel attempted to show during cross-examination that the descriptions provided by the victims at trial were inconsistent with those previously provided to police.

Graham did not testify at trial but told police that he did not participate in the robbery and instead was in the car to catch a ride from the Fieldstone housing complex. A deputy testified that at some point subsequent to Graham's arrest he drove from Bobby's apartment complex to the location of the stop via the highway, and the trip took 11 minutes traveling at 80 mph, the speed Rebecca's car was traveling during the pursuit. Although it is not entirely clear from the cold record, witnesses gave testimony that prosecutors characterize as demonstrating that Fieldstone, where Graham said he was picked up, is in the opposite direction from that in which the vehicle was seen traveling when it left Bobby's apartment complex.

The jury acquitted Graham of Counts 1 and 2, which charged Graham with the armed robbery of Rebecca and Bobby, respectively, and Count 5, which charged Graham with the aggravated assault of Bobby. The jury convicted Graham on Count 3, which charged him with hijacking a motor vehicle, and Count 4, with charged him with the aggravated assault of Rebecca.

Graham argues that the victims' testimony was suspect because eyewitness identifications, particularly cross-racial ones,[3] are often wrong. He also argues that their testimony was suspect because it was largely limited to race and clothing and because the victims' encounter with the perpetrators was brief, stressful, and in a dark location. However, the reliability of a witness' identification goes to the credibility and weight of the witness' testimony, a matter that is within the province of the jury, not this Court. *Jones v. State*, 329 Ga. App. 478, 479 (1) (765 SE2d 657) (2014) (rejecting sufficiency argument that identification of defendant was suspect given that victim saw only perpetrator's eyes during robbery). Graham cites *Rutland v. State*, 129 Ga. App. 313 (199 SE2d 595) (1973), for the proposition that an identification largely based on race and clothing is insufficient to sustain a conviction. However, in our opinion in that case there was no indication that the victim, whose face was covered during the crime, was able to identify the defendant. *See id.* at 313. The evidence deemed insufficient there was that the perpetrator was black and barefoot, that other witnesses had seen the defendant walking barefoot in the vicinity of the crime, that the victim had attempted to scratch the perpetrator, and that scratches were noted on the defendant's arm. *See id.* at 313-14. In contrast, Rebecca positively

---

[3] Graham does not point to record evidence of the victims' race.

6

identified Graham as the gunman, and her testimony was largely corroborated by additional evidence — particularly Graham being found in her stolen vehicle shortly after the 911 call and his possession of items that she claimed were stolen from her.

Graham also argues that descriptions given by the victims at trial contradicted one another, as well as Bobby's pretrial descriptions. However, any such inconsistencies go to the weight and credibility of the in-court identifications, and it is for the jury to assess the witness' credibility and resolve any conflicts in the evidence. *McCrary v. State*, 310 Ga. App. 215, 216 (1) (712 SE2d 622) (2011) (inconsistencies among witnesses' testimony); *Sherman v. State*, 225 Ga. App. 869, 872 (2) (485 SE2d 557) (1997) (inconsistencies between pre-trial and in-trial identifications).

Graham additionally argues that the jury's decision to convict him on Counts 3 and 4 and acquit on Counts 1, 2, and 5 was illogical given that Rebecca identified him as the man who pointed a gun at Bobby, but Rebecca is the named victim in Counts 3 and 4, and Bobby is the named victim in Counts 1, 2, and 5.[4] Graham

[4] In fact, Rebecca is the victim named in Count 1 of the indictment. Moreover, both Counts 3 and 4 involved the hijacking or attempted hijacking of Rebecca's vehicle. Although both Counts 3 and 4 made reference to a firearm, evidence the defendant pointed a gun directly at Rebecca is not necessary to support convictions on those counts. *See* OCGA § 16-5-44.1(b) ("A person commits the offense of

7

acknowledges that our Supreme Court has abolished the rule against inconsistent verdicts, *see Milam v. State*, 255 Ga. 560, 562 (2) (341 SE2d 216) (1986), but suggests in a footnote it might be time to reinstate that rule. However, "this Court has no authority to overrule or modify a decision made by the Supreme Court of Georgia[.]" *Pak v. Ga. Dep't of Behavioral Health & Developmental Disabilities*, 317 Ga. App. 486, 488 (731 SE2d 384) (2012).

2. Graham next argues that the trial court erred by instructing the jury that the State did not have to prove all of the acts listed in each count of the indictment. We disagree.

Counts 3 and 4, the two counts on which Graham was convicted, each referred to both a "firearm and a replica of a firearm." Count 3, the hijacking charge, accused Graham of obtaining a vehicle "while in a possession of a firearm and a replica of a firearm," and Count 4, one of the aggravated assault charges, alleged that he "did brandish a firearm and a replica of a firearm." The State requested that the trial court

---

hijacking a motor vehicle when such person while in possession of a firearm or weapon obtains a motor vehicle from the person or presence of another by force and violence *or intimidation* or attempts *or conspires* to do so") (emphasis added); OCGA § 16-5-20 to -21 (aggravated assault may be committed by use of a deadly weapon to place someone "in reasonable apprehension of immediately receiving a violent injury").

8

instruct the jury that, in order for the jury to find the defendant guilty, the State need prove only that the defendant committed at least one act that satisfied each element of the crime charged. The trial court gave an instruction that was similar, but not identical, to that requested by the State:

> I charge you that to find the defendant guilty of the crime charged, the State need only prove that the defendant committed at least one act which satisfies each and every element of the crime charged. Merely because two or more separate acts are listed in the charge does not require the State to prove all of the listed acts to find the defendant guilty of the crime charged.
>
> In addition the presence of the word, and, in the description of actions taken by the accused is not required for the State to prove each act listed.

After the trial court sent the jury out to deliberate, defense counsel said he had no objections to the jury instructions.

Because the defendant failed to lodge any specific objection to the instruction he complains of now, we review the instruction to determine whether it "constitutes plain error which affects substantial rights of the parties." OCGA § 17-8-58(b). Under that standard, the court must consider "whether the instruction was erroneous, whether it was obviously so, and whether it likely affected the outcome of the

9

proceedings." *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011) (citation and internal punctuation omitted). If it answers all three of these questions in the affirmative, the appellate court may reverse "if the error seriously affects the fairness, integrity, or public reputation of the proceedings below." *Id.* (citation omitted)

Here, the instruction in question does not constitute error at all. Although the instruction was not perfectly clear, the essence of the instruction was a correct statement of the law: "If a crime may be committed in more than one way, it is sufficient for the State to show that it was committed in any one of the separate ways listed in the indictment, even if the indictment uses the conjunctive rather than disjunctive form." *Gipson v. State*, 332 Ga. App. 309, 317 (5) (772 SE2d 402) (2015) (citation and internal punctuation omitted). For that reason, in *Gipson*, we ruled that it was not error to instruct the jury on the elements of aggravated battery by using the disjunctive language of the statute,[5] even though the indictment charged the crime in the conjunctive. *Id.* Similarly, here it did not shift the burden of proof to the defense

---

[5] "A person commits the offense of aggravated battery when he or she maliciously causes bodily harm to another by depriving him or her of a member of his or her body, by rendering a member of his or her body useless, or by seriously disfiguring his or her body or a member thereof." OCGA § 16-5-24(a).

10

to instruct the jury that the prosecution need prove only the use of a firearm or a replica.

3. Graham also argues that the trial court improperly commented on the evidence when it told jurors, "you now have a pretty good idea where things happened." We disagree.

Near the end of the trial court's charge to the jury, it instructed:

Now I want to caution you about one other thing. You now have a pretty good idea about where things happened, all that's — you know, the distances, times that may be important in this case.

This is not a free lance committee work where somebody needs to go out and do anymore evaluation or investigation. Don't get on Google, don't get on Maps, don't go check out whose address is what. Stay away from all that stuff as it relates to this case.

Again, the defense did not object to the charge.

Graham argues that the trial court's instructions in this regard amounted to an impermissible comment on the evidence requiring a new trial under OCGA § 17-8-57. He argues that the trial court's statement conveyed to jurors that the court thought that venue and a number of essential elements of the crime had been proven. Graham

11

contends that the trial court's statement "served to highlight" the State's argument that his story that he was just catching a ride was false.

The version of OCGA § 17-8-57 in effect at the time of Graham's trial[6] provided:

> It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused. Should any judge violate this Code section, the violation shall be held by the Supreme Court or Court of Appeals to be error and the decision in the case reversed, and a new trial granted in the court below with such directions as the Supreme Court or Court of Appeals may lawfully give.

As underscored by our Supreme Court in *Rouse v. State*, 296 Ga. 213, 214-15 (2) (765 SE2d 879) (2014), any violation of that version of OCGA § 17-8-57 required a

---

[6] Graham was tried in November 2014. The Legislature amended the statute in 2015. Ga. L. 2015, p. 1050. The new statute "limits the scope of appellate review in cases in which no timely objection was made at trial." *Pyatt v. State*, No. S15A1734, 2016 Ga. LEXIS 249, 13-14 n.9 (3) (Ga. March 25, 2016). Our Supreme Court recently suggested that this limit on appellate review might apply even to cases that were tried before the effective date of the new statute. *See id.* at 14 n.9 (3). Like that Court, we need not decide whether the 2015 amendment applies to this case because we find no reversible error even under the former version of the statute. *See id.* at 15 n.9 (3).

12

new trial regardless of whether there had been any showing of actual prejudice to the defendant.

Graham argues that the trial court's instruction was akin to the comments found to merit reversal in *Rouse*, in which the trial court during preliminary instructions told members of the venire that they would "be hearing about a case, which is a murder case, that happened in Muscogee County[.]" *Rouse*, 296 Ga. at 215 (2). However, the trial court's instructions here are different because they were not "an explicit comment by a trial judge indicating the court's opinion that a critical element that must be proved by the State was not in dispute." *Id.* at 216 (2). The comments here were made in the context of telling jurors not to do their own investigation. They are more akin to the trial court's inartful comments in *Atkins v. State*, 253 Ga. App. 169, 170-71 (2) (558 SE2d 755) (2002), which included an admonishment that prospective jurors "listen carefully to the facts as contained in the indictment." In an opinion that was distinguished, not overruled, in *Rouse*, this court found that those comments did not violate OCGA § 17-8-57, particularly in the light of the trial court's otherwise accurate instructions on the State's burden of proof and other related matters. *See Rouse*, 296 Ga. at 216-17 (2); *Atkins*, 253 Ga. App. at 170-71 (2). Similarly, here, the trial court instructed the jury that the State bore the burden to prove each essential

13

element of the charged crimes, as well as venue, beyond a reasonable doubt. The trial court also instructed jurors that it had not intended by any of rulings or comments to express any opinion on the evidence or guilt of the accused. The trial court did not err in making the complained-of comment here.

*Judgment affirmed. Phipps, P. J., and Dillard, J., concur*.